**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In the Matter of: LAWRENCE E
ORMSBY; CINDY J. ORMSBY,
                    *Debtors,*

LAWRENCE E ORMSBY,
                    *Appellant,*

v.

FIRST AMERICAN TITLE COMPANY OF
NEVADA,
                    *Appellee.*

Nos. 08-15572 and
08-15573

B.C. No.
2005-28840-
A-7
D.C. No.
2:07-CV-
00447-MCE

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Argued and Submitted
June 11, 2009—San Francisco, California

Filed January 8, 2010

Before: Marsha S. Berzon, Jane R. Roth,* and
Mary M. Schroeder, Circuit Judges

Opinion by Judge Roth

---

**The Honorable Jane R. Roth, Senior United States Circuit Judge for
the Third Circuit, sitting by designation.

## COUNSEL

Helga A. White, Esquire, Auburn, California, for the appellant.

James A. Tiemstra, Esquire, Law Offices of James A. Tiemstra, California, for the appellee.

## OPINION

ROTH, Circuit Judge:

This is a bankruptcy case, in which a creditor, First American Title Company (FATCO), seeks to prevent the discharge of a state court judgment against the debtor, Lawrence Ormsby, under 11 U.S.C. §§ 523(a)(4) and (a)(6). The Nevada state court found Ormsby had converted and misappropriated property belonging to FATCO. Ormsby filed for bankruptcy protection, and FATCO moved to prevent the discharge of the state court judgment. The Bankruptcy Court granted summary judgment in favor of FATCO; the District Court, acting in an appellate capacity, affirmed. For the reasons given below, we affirm the District Court's order granting summary judgment in favor of FATCO. We also affirm the District Court's determination with regard to the withdrawal of FATCO's prior motion for attorney fees.

## I.

We repeat here the findings of fact the Nevada state court made when it found Ormsby had engaged in misappropriation and conversion. FATCO, the creditor in this case, is a title company that provides escrow services and title insurance for real property transactions. Ormsby, the debtor in this case, is the owner of Inter-County Title Company of Nevada (Inter-County), which also provides escrow and title services.

Title companies like FATCO and Ormsby's Inter-County facilitate title searches that could otherwise only be conducted through an onerous search of the official public records for transactions affecting real property. Such records in Washoe County, Nevada, date back to the mid-1800s and reflect deeds, deeds of trust, mortgages, judgments, among other documents related to real property. The Washoe County Recorder organizes the various documents by creating a grantor/grantee index. To make the title search process easier, title companies create base files, subdivision files, and preliminary title reports, which in turn are used as aids for examining and insuring title. Title companies also compile documents in the form of title plants, which constitute a separate method of assembling recorded information based on the location of the property and which offer search capabilities far beyond the grantor/grantee index available at the county recorder.

In Washoe County, title companies use title plants covering four separate periods: 1901-1964, 1965-1978, 1979-1999, and 2000 to the present. These plants are leased to subscribers, who are not free to transfer, sell, assign, or allow others to access the plants. FATCO owned a one-seventh interest in the 1979-1999 plant and leased the other plant data.

In the spring of 2000, FATCO had possession of the three title plants covering the 1900s on microfiche and stored them in a non-public area for its use only. In addition, FATCO compiled a substantial number of base files, subdivision files, and preliminary title reports. Though these documents were made available to customers and sometimes to other title companies, FATCO considered most of these records private and proprietary.

In June of 1994, Joseph McCaffrey was hired to head FATCO's commercial title business. McCaffrey had access to all of FATCO's records and title plant microfiche and used

them on a regular basis. He was aware that these were not public records but were private and proprietary.

In early 2000, Ormsby prepared Inter-County to begin operations in Washoe County. He purchased rights to the title plant for 2000 until the present but not to any of the plants covering the 1900s. Additionally, Ormsby solicited employees of FATCO to work for Inter-County. McCaffrey was one of the employees Ormsby was able to lure from FATCO. The two discussed the importance of access to the title plants to any new title company in the Washoe County area.

While he still had access to his office at FATCO, McCaffrey downloaded and e-mailed FATCO's proprietary base files, subdivision files, preliminary title reports, and other business records. McCaffrey, with the encouragement, cooperation, and assistance of Ormsby, appropriated the 1901-1964, 1965-1978, and 1979-1999 title plants from the possession of FATCO. Ormsby took the title plants and sent them to a non-local copy service for duplication.

Inter-County then used these appropriated title plants in searching titles and issuing policies. It did so until the return of the copied plants was compelled by court order. From May 2000 until the plants were returned in August 2002, Inter-County handled approximately 3000 escrows. The estimated cost savings realized by Inter-County's use of the plants was about $50 per transaction, resulting in an estimated $150,000 in savings.

In 2002, FATCO filed an action against Ormsby in the Second Judicial District Court of Nevada in and for the County of Washoe. Before trial, FATCO settled with McCaffrey for $15,000, under the condition that McCaffrey testify against Ormsby. The court found that Ormsby encouraged, assisted, and cooperated with McCaffrey in misappropriating the title plants from FATCO and used those plants to conduct title searches for the purposes of issuing title insurance. The court

also found that Ormsby converted for Inter-County's use the base files, subdivision files, and preliminary title reports of FATCO to assist in the opening of the business. The court found that, in the misappropriation of the title plants and files, Ormsby had acted maliciously in that his conduct was willful, wanton, and reckless.

The court granted $141,500[1] in compensatory damages based on the measure of a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret. Punitive, or exemplary, damages were also awarded in the amount of $283,000 based on evidence of willfulness in Ormsby's cooperation with McCaffrey in taking, copying, and surreptitiously returning the title plants and files. The court awarded pre-judgment interest of $47,593.83 on the compensatory damages, attorney fees of $223,159.50, and costs of $36,821.83.

Ormsby and his wife subsequently filed for Chapter 7 bankruptcy protection in the Bankruptcy Court for the Eastern District of California, Sacramento Division. FATCO filed a complaint with the court to establish that the judgment Ormsby owed was non-dischargeable under 11 U.S.C. § 523(a)(4) and (a)(6). FATCO then filed for summary judgment, which was granted. Ormsby filed a motion for reconsideration that was rejected. He then appealed to the Bankruptcy Appellate Panel. FATCO filed a motion for transfer to the District Court for the Eastern District of California, which affirmed the bankruptcy court's grant of summary judgment in favor of FATCO. Ormsby now appeals to this Court.

## II.

Ormsby suggests that the state court judgment against him

---

[1]Another title company, Founders, received additional compensatory damages in the amount of $8,500 for the use of the 1901-1964 title plant. These damages are not at issue in this case.

did not constitute larceny within the federal definition of the term and that the court made no findings of willful or malicious injury. As a result, he contends, summary judgment was inappropriate because the issues are not precluded by the state court judgment. We disagree.[2] The state court judgment is sufficient to preclude relitigation of whether Ormsby's conduct meets the requirements of subsection 523(a)(4) or of subsection 523(a)(6), either of which would be sufficient to prevent the discharge of the judgment debt.[3]

## A.   Section 523(a)(4)

**[1]** Section 523(a)(4) prevents discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). "For purposes of section 523(a)(4), a bankruptcy court is not bound by the state law definition of larceny but, rather, may follow federal common law, which defines larceny as a 'felonious taking of another's personal property with intent to convert it or deprive

---

[2]This Court reviews a "bankruptcy court's decision independently, without deference to the district court." *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.),* 503 F.3d 933, 940 (9th Cir. 2007). "The bankruptcy court's conclusions of law, including its interpretation of the Bankruptcy Code, are reviewed de novo and its factual findings are reviewed for clear error." *Id.*

[3]The preclusive effect of a state court judgment rests upon the preclusion law of the state in which the judgment was issued. *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995). Under Nevada state law, issue preclusion is appropriate when "(1) the issue decided in the prior litigation [is] identical to the issue presented in the current action; (2) the initial ruling [was] on the merits and [has] become final; and (3) the party against whom the judgment is asserted [is] a party in privity with a party to the prior litigation." *Kahn v. Morse & Mowbray*, 117 P.3d 227, 235 (Nev. 2005). Issue preclusion may apply "even though the causes of action are substantially different, if the same fact issue is presented." *LaForge v. State, Univ. & Cmty. Coll. Sys. of Nev.*, 997 P.2d 130, 134 (Nev. 2000) (internal citations omitted).

the owner of the same.' " 4 *Collier on Bankruptcy* ¶ 523.10[2] (15th ed. rev. 2008).[4]

Ormsby's main contention is that the facts of the state court judgment do not prove larceny for the application of section 523(a)(4) because the federal definition of larceny requires fraudulent intent whereas conversion[5] under Nevada state law does not require a finding of fraudulent intent. Conversion is defined as "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein *or* in derogation, exclusion, or defiance of such title or rights. Additionally, conversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge." *M.C. Multi-Family Development, L.L.C. v. Crestdale Assoc., Ltd.*, 193 P.3d 536, 542-43 (Nev. 2008) (internal citations omitted). Accordingly, Ormsby argues that the state court's finding of conversion does not translate to a finding of larceny; therefore, the issue is not precluded.

**[2]** We make no determination concerning whether federal law requires a finding of fraudulent intent for larceny as Ormsby contends.[6] Were we to find that larceny required

---

[4]Felonious is defined as " 'proceeding from an evil heart or purpose; malicious; villainous . . . Wrongful; (of an act) done without excuse of color of right.' " *Elliott v. Kiesewetter (In re Kiesewetter)*, 391 B.R. 740, 748 (Bankr. W.D. Pa. 2008) (quoting BLACK'S LAW DICTIONARY (8th ed. 2004)).

[5]The Bankruptcy Court noted that the state court seemed to merge the findings of conversion and misappropriation. The Bankruptcy Court ultimately determined that the distinction between the two bases of liability was not sufficiently great to make a difference in its determination that the judgment was nondischargeable. We agree with the Bankruptcy Court to the extent that the state court conversion finding is alone sufficient to support nondischargeability under section 523(a)(4). Nondischargeability under section (a)(6), which the Bankruptcy Court did not address, does seem to require the finding of misappropriation to apply.

[6]The District Court in this case found fraudulent intent was not necessary under the federal definition of larceny, though it acknowledged precedent stating otherwise.

fraudulent intent, the state court judgment would provide enough information to determine that the court found that his actions amounted to fraud, because "[i]ntent may properly be inferred from the totality of the circumstances and the conduct of the person accused." *Kaye v. Rose (In re Rose)*, 934 F.2d 901, 904 (7th Cir. 1991). The totality of the circumstances as described in the state court's findings of fact make clear that Ormsby acted with fraudulent intent. When he started Inter-County, he purchased the rights to use the title plant for 2000 until the present, demonstrating that he was aware of the lawful means of obtaining access to them. Rather than purchasing the rights to the title plants for the 1900s, he hired McCaffrey away from a competing title company and discussed with him the importance of the title plants to a new title company. While McCaffrey still had access to the plants that FATCO possessed, Ormsby encouraged, cooperated, and assisted McCaffrey's removal of the plants and their reproduction. Of particular note, Ormsby sent the microfiche containing the plants to a non-local copying service, likely to avoid detection. Based on these facts found by the state court, Ormsby's conduct constituted larceny within the federal meaning of the term; accordingly under section 523(a)(4), his debt cannot be discharged.

## B.   Section 523(a)(6)

**[3]** Section 523(a)(6) prevents discharge "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Supreme Court in *Kawaauhau v. Geiger (In re Geiger)*, 523 U.S. 57 (1998), made clear that for section 523(a)(6) to apply, the actor must intend the consequences of the act, not simply the act itself. *Id.* at 60. Both willfulness and maliciousness must be proven to block discharge under section 523(a)(6).

### i.  Willful Injury

**[4]** In this Circuit, "§ 523(a)(6)'s willful injury requirement is met only when the debtor has a subjective motive to inflict

injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). The Debtor is charged with the knowledge of the natural consequences of his actions. *Cablevision Sys. Corp. v. Cohen (In re Cohen)*, 121 B.R. 267, 271 (Bankr. E.D.N.Y. 1990); *see Su,* 290 F.3d at 1146 ("In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action.").

**[5]** Ormsby contends section 523(a)(6) does not apply because the state court did not adopt a finding that Ormsby had the subjective intent to injure FATCO or that he believed that FATCO's injury was substantially certain to occur as a result of his conduct. Ormsby must have known that FATCO's injury was substantially certain to occur as a result of his conduct. Because Ormsby paid for access to the title plants for 2000 until present, he was necessarily aware that his use of FATCO's title plants and other materials without paying for them had an economic value. The state court explicitly found that FATCO's suffered injury by granting $141,500 in compensatory damages based on the measure of a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret. Ormsby therefore inflicted willful injury on FATCO.

### ii.   Malicious Injury

**[6]** "A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001) (internal citations omitted). Malice may be inferred based on the nature of the wrongful act. *See Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 554 (9th Cir. 1991).[7] To infer malice, however, it must first be established that the conversion was willful. *See Thiara*, 285 B.R. at 434.

---

[7]The Supreme Court in *Geiger* did not address the malicious prong of section 523(a)(6). The Bankruptcy Appellate Panel for this Circuit has

In this case, Ormsby knew that FATCO's injury was substantially certain to occur as a result of his conduct. Ormsby additionally knew the legal way to obtain access to the title plants was to purchase rights. The state court found FATCO suffered an injury as a result of this use, and Ormsby has offered no just cause or excuse for his conduct.[8] Moreover, in granting attorney's fees, the state court found the misappropriation was willful and malicious.

[7] Based on these facts found by the state court, Ormsby's conduct meets both the willful and malicious prongs of section 523(a)(6); accordingly, we affirm the nondischargeability of the judgment.

### III.

Ormsby contests the District Court's grant of FATCO's motion to withdraw from the Bankruptcy Court consideration of FATCO's prior motion for attorney's fees.[9] The court withdrew FATCO's motion for fees to the Bankruptcy Court, which had dropped the motion from the court's calendar until the completion of the appellate process. *See* 11 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its

---

thus determined that its discussion of malice in *Littleton* survived *Geiger*. *See Thiara v. Spycher Bros. (In re Thiara)*, 285 B.R. 420, 434 (B.A.P. 9th Cir. 2002).

[8]*See Jercich*, 238 F.3d at 1209 (finding maliciousness, the Ninth Circuit stated, "[T]he state court found Jercich knew he owed Petralia the wages and that injury to Petralia was substantially certain to occur if the wages were not paid; that Jercich had the clear ability to pay Petralia the wages; and that despite his knowledge, Jercich chose not to pay and instead used the money for his own personal benefit. Jercich has pointed to no 'just cause or excuse' for his behavior.").

[9]This court reviews a district court's decision to withdraw the reference for an abuse of discretion. *See Security Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers* 124 F.3d 999, 1008 (9th Cir. 1997).

own motion or on timely motion of any party, for cause shown."). The District Court determined that judicial economy justified the withdrawal. *See Security Farms*, 124 F.3d at 1008 ("In determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors.").

[8] The District Court's withdrawal of the motion and subsequent decision on attorney's fees was not improper. This Circuit has stated "that a district court retains the power to award attorney's fees after a notice of appeal from the decision on the merits has been filed." *U.S. ex rel. Shutt v. Cmty. Home & Health Care Servs., Inc.*, 550 F.3d 764, 766 (9th Cir. 2008) (internal citation omitted). Accordingly, we affirm the District Court's grant of FATCO's motion to withdraw the reference in regard to its motion for attorney's fees.

## IV.

[9] For the foregoing reasons, we affirm the District Court's judgment that Ormsby's debt is nondischargeable under either section 523(a)(4) and (a)(6). Additionally, we affirm the District Court's grant of FATCO's motion to withdraw the reference in regard to its motion for attorney's fees.

**AFFIRMED.**