NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No. WW-10-1382-WaPaJu |
| | ) |
| WALTER WILLIAM COPLAND, | ) Bk. No. 09-47782 |
| | ) |
| Debtor. | ) Adv. No. 09-04192 |
| _____ | ) |
| | ) |
| WALTER WILLIAM COPLAND, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **M E M O R A N D U M** [1] |
| | ) |
| BONNIE ANTHIS, Individually and as | ) |
| Personal Representative for the | ) |
| Estate of Harvey Allen Anthis, | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Argued and Submitted on October 21, 2011
at Seattle, Washington

Filed - January 10, 2012

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Brian D. Lynch, Bankruptcy Judge, Presiding

_____

Appearances:    David Clement Smith, Esq. argued for Appellant Walter
W. Copland; John G. Schultz, Esq. of Leavy Schultz
Davis & Fearing PS argued for Appellee Bonnie Anthis

_____

Before: WALLACE,[2] PAPPAS, AND JURY, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (*see* Fed. R. App. P. 32.1), it has no precedential value. *See* 9th Cir. BAP R. 8013.1.

[2] Hon. Mark S. Wallace, Bankruptcy Judge for the Central District of California, sitting by designation.

Debtor Walter W. Copland ("Copland") appeals the Order and Judgment of the bankruptcy court decreeing that the debt owed by him to Bonnie Anthis[3] ("Creditor") is the result of willful and malicious injury and therefore not dischargeable pursuant to section 523(a)(6).[4]  For the reasons stated below, we AFFIRM.

**FACTS**[5]

Copland is a retired police officer from the City of Tacoma Police Department.  He often spent time in Kennewick, Washington, where his son lived.  As a result, he became acquainted with John Stevens, who lived across the street from Copland's son, and with Mr. Stevens's friend Al Anthis.  On September 15, 2005, Mr. Stevens and Copland spent time together during the day, including a visit to the Burbank Tavern in nearby Walla Walla County. After stopping to purchase whiskey and vodka, Mr. Stevens and Copland returned to Stevens's house later in the afternoon, where they met up with Mr. Anthis.  The three men hung out on Mr. Stevens's deck, talking about fishing trips, eating hot wings and drinking around a four to five foot hexagonal table.

Mr. Stevens, as host, was in and out of the house cooking the hot wings and described the ensuing events as he observed

---

[3] Individually, and in her capacity as personal representative of the estate of Harvey Anthis.

[4] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[5] We take these facts primarily from the Memorandum Opinion of the bankruptcy judge entered on September 23, 2010.

them. He recalled Copland saying to Mr. Anthis "I could shoot and kill you," and Mr. Anthis responding "Bring it on." Copland then stood up from his stool, walked behind Mr. Stevens and around the table to Mr. Anthis. He pulled out a .22 derringer, placed it up to Mr. Anthis's right temple and fired. Mr. Stevens saw the flash of the shot, heard the shot, and at that point saw that Copland was holding the gun. He did not see him pull the trigger. Mr. Anthis instantly fell off his bar stool to the floor. Copland then returned to his seat, put the gun in his back pocket, and placed his head in his hands, saying "Oh, my God, I've killed Al."

The Kennewick police arrived quickly in response to a call and found Mr. Stevens and Copland still sitting on the deck. After being handcuffed and having the handgun removed from his pocket, Copland told the officers "I'm sorry. I killed him. He's dead." He repeated a similar statement when an officer checked Mr. Anthis's pulse and thought he found one.

The next day at the jail Copland was trying to reach his son by phone. When he was unsuccessful, the duty officer suggested he call his son's neighbor, Mr. Stevens, for assistance. Copland responded, "That's cold. I can't call him. I just shot and killed our best friend." A detective who talked to Copland that day testified that Copland was able to tell him what he had done the whole day up to the events at the Stevens's house.

Copland was eventually convicted of first degree manslaughter in criminal proceedings. Creditor filed a wrongful death lawsuit against Copland, which resulted in a judgment. After Copland filed a chapter 7 bankruptcy petition in 2009,

Creditor filed a timely adversary proceeding, asserting that the debt owed by Copland was non-dischargeable under § 523(a)(6) as based on willful and malicious injury. The bankruptcy court held a trial and determined the debt was non-dischargeable. This appeal followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(b)(2)(I) and 1334. We have jurisdiction of this appeal under 28 U.S.C. §§ 158(a)(1) and (c).

## ISSUES

Copland makes three arguments on appeal: (1) no evidence exists that Copland intended to kill Anthis; (2) the bankruptcy court improperly placed a burden of proof on Copland; and (3) the evidence does not support the bankruptcy court's finding that Copland intended to kill Anthis. Copland emphasizes in his appellant's brief that the evidence is also consistent with an accidental shooting, in part because Stevens never actually *saw* Copland shoot Anthis and in part because there was no plausible motive for an intentional shooting.

## STANDARD OF REVIEW

The Panel reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo* and applies *de novo* review to mixed questions of law and fact that require consideration of legal concepts and the exercise of judgment about the values that animate the legal principles. *Wolkowitz v. Beverly (In re Beverly)*, 374 B.R. 221, 230 (9th Cir. BAP 2007), *aff'd in part and dismissed in part*, 551 F.3d 1092 (9th Cir. 2008). The issue of dischargeability of a debt is a mixed

question of fact and law that is reviewed *de novo*. *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004). We review the bankruptcy court's factual findings, which underlie the mixed question, for clear error. Rule 8013.

## DISCUSSION AND ANALYSIS

Section 523(a)(6) provides in relevant part that "[a] discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity . . . ." A determination of non-dischargeability under section 523(a)(6) requires a finding that the injury was willful and a finding that the injury was malicious. These are separate, independent elements. *Ormsby v. First Am. Title co. (In re Ormsby),* 591 F.3d 1199, 1206 (9th Cir. 2010); *Barboza v. New Form, Inc. (In re Barboza),* 545 F.3d 702, 711 (9th Cir. 2008).

The word "willful" in (a)(6) denotes a deliberate and intentional injury, not merely a deliberate or intentional act that leads to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). The actor must intend the consequences of the act, not merely the act itself. A driver who changes lanes without looking and collides with another vehicle intentionally turned the wheel to the left or right but would not be considered to have "willfully" injured the other driver or his vehicle absent evidence that he intended the collision. The willfulness requirement is met if it is shown that the debtor had a subjective intent to cause harm or a subjective belief or knowledge that harm was substantially certain to occur. *In re Su*, 290 F.3d 1140, 1145 (9th Cir. 2002); *Petralia v. Jercich*

-5-

*(In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001).

An injury is "malicious" under (a)(6) when it involves a wrongful act, done intentionally, that necessarily causes injury and is committed without just cause or excuse. *In re Jercich*, 238 F.3d at 1209; *Thiara v. Spycher Bros. (In re Thiara)*, 285 B.R. 420, 427 (9th Cir. BAP 2002).  Maliciousness may be inferred based on the nature of the wrongful act, *In re Ormsby*, 591 F.3d at 1207, and it may be implied by the circumstances surrounding a debtor's acts and conduct, even in the absence of personal hatred, spite, or ill-will.  *Navistar Fin. Corp. V. Stelluti (In re Stelluti)*, 94 F.3d 84, 87-88 (2d Cir. 1996); *Sanger v. Busch (In re Busch)*, 311 B.R. 657, 666 (N.D.N.Y. 2004); *Itule v. Metlease, Inc. (In re Itule)*, 114 B.R. 206, 209-10 (9th Cir. BAP 1990).

A.   **Sufficiency of the Evidence That Copland Intended to Kill Anthis**

Copland argues that there is no evidence of a motive of any kind why he would kill Anthis and that he never formed the intent to kill Anthis.  Specifically, he points to the absence of a heated or angry verbal exchange immediately preceding the shooting.

Motive is not an element of willfulness or maliciousness under section 523(a)(6).  If a person walks up to a complete stranger on the street and, for no reason at all, shoots him in the head, intending to hurt or kill him, the resulting injury is willful and malicious notwithstanding the absence of motive.

The bankruptcy court determined that the direct and circumstantial evidence of Copland's intent to injure Anthis by

-6-

shooting him was compelling. This finding is not clearly erroneous. Although the shooting of Anthis appears to have been a spur of the moment event, that does not mean Copland did not intend the fatal injury. When Copland said, "You know, I could shoot you," or "I could kill you," he was making a kind of boast. When Anthis replied, "Bring it on," he in a sense threw down the gauntlet, daring Copland to make good his boast. The logical implication from the fatal gunshot that occurred a few seconds later is that Copland made good his boast. Copland's intention to kill Anthis may be inferred from a motive of carrying through on a boast and responding to a dare.

Copland argues that the evidence is equally consistent with the occurrence of an accident. After all, the argument runs, Stevens did not actually see Copland put the derringer to Anthis's temple and pull the trigger. Perhaps the gun slipped.

The bankruptcy court rejected an accidental shooting hypothesis. In the abstract, Copland's state of intoxication may be seen as providing some support for an accidental shooting. It is not unrealistic to suppose that a drunk doesn't handle a firearm as carefully as a sober person. However, it is speculation that an accident occurred,[6] and the boast/dare verbal colloquy that immediately preceded the shooting creates a strong inference that the shooting was intended and not accidental. The

_____

[6] As the bankruptcy court pointed out in its Memorandum Opinion, there was no evidence of a slip or a scuffle that might create an inference that the shooting was accidental or in self-defense. *Anthis v. Copland (In re Copland)*, Nos. 09-47782, 09-4192, 2010 Bankr. LEXIS 4161 at *5-*6 (Bankr. W.D. Wash. Sept. 23, 2010).

inference is powerful enough to overcome the speculative and otherwise unsupported argument that an intoxicated Copland shot Anthis accidentally. Even if we as the fact-finder might have weighed the evidence differently, "when there are two permissible views of the evidence, the trial judge's choice between them cannot be clearly erroneous." *In re Baldwin Builders*, 232 B.R. 406, 410 (9th Cir. BAP 1999). Since even in a *de novo* review of a mixed question, we must give deference to the bankruptcy judge's factual findings, we find no error here.

**B. Placement of the Burden of Proof By the Bankruptcy Court**

The bankruptcy court's Memorandum Opinion states that "Mr. Copland contended that the evidence showed the shooting was an accident or that he was not conscious that he had pulled the trigger due to his state of inebriation."[7] Based upon this statement, Copland contends that the bankruptcy court put the burden of proof on him rather than on Creditor.

It is plain from both the statement and its context in the opinion that the bankruptcy court was merely relating what Copland's contentions were, not placing the burden of proof on Copland. At no point in the Memorandum Opinion does the bankruptcy court state or imply that the burden of proof is on anyone other than Creditor.

**C. The Bankruptcy Court's Findings on Copland's Intent**

In his final argument, Copland essentially re-argues the first argument discussed above, namely, that the shooting could

---

[7] *Id*. at *5.

-8-

have been an accident, and that it was error based upon the evidence presented for the bankruptcy court to conclude that Copland intended to kill Anthis. Focusing again on motive, Copland states, "Here, of course, however tragic the killing, no one has suggested any motive for Mr. Copland to kill his friend."[8] According to Copland, "every known fact in this case is as consistent with an accidental shooting as an intentional homicide."[9]

Regarding motive, as discussed above, motive is not necessary to show intent to injure. However, to the extent it impacts our analysis, the evidence shows that Copland's motive was to make good on his boast and to respond to Anthis's dare, "Bring it on." With respect to the known facts in this case, it is simply not true that "every known fact" is as consistent with an accidental shooting as an intentional homicide. When a person says "I could kill you" and then does exactly that a few seconds later, that is a fact consistent with homicide and completely inconsistent with an accidental slaying.

Equally true, shooting Anthis was a wrongful act, done intentionally, that necessarily caused injury and was without just cause or excuse.

**CONCLUSION**

For the reasons stated, we AFFIRM the bankruptcy court's judgment decreeing Copland's debt to Creditor to be non-dischargeable in its entirety.

---

[8] Appellant's Opening Brief at 18.

[9] Appellant's Opening Brief at 19.