**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NC-14-1396-KiTaD |
| ALBERT ALFRED GRENIER, | Bk. No.   11-61744 |
| Debtor. | Adv. No.   12-05067 |

ALBERT ALFRED GRENIER,

　　　　　　　Appellant,

v.　　　　　　　　　　　　　　　**M E M O R A N D U M**[1]

JOAN ROBACK,

　　　　　　　Appellee.

Argued and Submitted on May 14, 2015,
at San Francisco, California

Filed - June 10, 2015

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Charles D. Novack, Bankruptcy Judge, Presiding

Appearances:　　Michael E. Stone of Stone — Siegel Law Firm argued for appellant Albert Alfred Grenier; Richard A. Canatella of Cotter & Del Carlo argued for appellee Joan Roback.

Before:　KIRSCHER, TAYLOR and DUNN, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Albert Alfred Grenier ("Debtor") appeals an order granting summary judgment to Joan Roback ("Joan").[2] The bankruptcy court applied issue preclusion to a California judgment against Debtor for financial elder abuse, determining that the debt constituted a willful and malicious injury under § 523(a)(6).[3] Because Joan failed to establish that Debtor's state of mind was actually litigated or necessarily decided by the state court, we VACATE and REMAND for further proceedings.[4]

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Prepetition events

In 2011, Debtor was found liable for financial elder abuse along with Joan's brother, Richard Bertolina ("Richard"). WELF. & INST. CODE § 15610.30. The state court determined that Debtor, a real estate investor in both California and Illinois, conspired with Richard, his friend and business associate, to take one-half of a property located at 438-440 32nd Avenue in San Francisco (the "Property") from Richard and Joan's elderly mother, Mary D.

---

[2] Three members of Joan Roback's family are mentioned in this decision: Joan Roback, her brother Richard Bertolina, and her mother Mary Bertolina. For convenience reference is made to each family member by first name. No disrespect is intended.

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[4] Debtor's excerpts of the record are missing several documents necessary for our review of this appeal, including: (1) Joan's adversary complaint; (2) Joan's motion for summary judgment; (3) Debtor's opposition to the motion; (4) Joan's reply; (5) the order dismissing Joan's § 523(a)(2)(A) claim; and (6) the pages of the transcript where the bankruptcy court entered its findings for issue preclusion. We have taken the liberty of retrieving these documents from the bankruptcy court's electronic docket. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

Bertolina ("Mary"), who died in 2006.

Mary and her spouse acquired a one-half interest in the Property in 1947; the other half interest was owned in joint tenancy with Mary's parents. Ultimately, Mary and her siblings inherited their parents' interest in the Property. Mary then bought her siblings' interest in the Property for $90,000, using some of her own funds and, with Richard's assistance, borrowing the remaining amount. To facilitate the loan, Richard took title to a one-half interest in the Property pursuant to a tenancy in common agreement. Richard did not put up any of his own funds for the buy-out. The testimony established that after Richard received an ownership interest to facilitate the loan, Richard used his interest in the Property as collateral to borrow money for his own purposes. Richard's debt secured by the Property grew over time to approximately $275,000.

While the testimony does not use precisely appropriate legal terms, we understand Joan's position to be that Mary never intended equitable title to pass to Richard until her death and, then, only in accordance with her 1978 will and 1998 revocable trust, whereby Joan and Richard would equally share Mary's estate. Notably, Debtor notarized Mary's revocable trust document, dated March 26, 1998.

Mary suffered a stroke in April 2001 at age 82, requiring hospitalization and then relocation to a skilled nursing facility. In 2002, she began showing signs of a mental disorder, requiring relocation to another facility where she remained until her death. In January 2002, Mary gave Joan a power of attorney over her affairs. Debtor again notarized that document.

-3-

**1. Debtor obtains Mary's one-half interest in the Property**

In July 2002, on Richard's initiative, Mary's half interest in the Property was sold to Debtor and his wife as trustees of the Grenier Trust for $300,000, with the deed recorded on August 1, 2002. Debtor prepared certain documents for the transaction ("to help Rich"), and one of his entities financed the transaction. Debtor testified that the title company notary appeared at the care facility to notarize Mary's signature for the sale documents, but refused to do so because she held outdated identification.

Raymond Beach (deceased), Debtor's former business associate, ultimately notarized the grant deed allegedly signed by Mary. The state court found that Mary's signature on the conveyance had been forged; the appellate court stated in its decision that her signature "may have been" forged. Richard used most of the $300,000 in sale proceeds to satisfy his personal outstanding loans secured by the Property; Mary only received an annuity for $31,000.

As part of the same transaction, Richard and the Grenier Trust obtained a refinance loan of $438,000, secured by the Property. Richard paid Joan $59,000 out of escrow, a payment she testified was "hush money," and Richard received $129,661.

In November 2003, Richard and the Grenier Trust sold the entire Property to Richard's son and a third party for $1 million. Based on expert testimony that the entire Property could have sold for $1 million when Debtor purchased it, the state court found that the value for Mary's half interest sold to Debtor's trust in 2002 was $500,000, not $300,000.

-4-

**2. The financial elder abuse action against Debtor**

Mary's conservator filed a petition under CAL. PROB. CODE § 850 et seq., alleging that Debtor had assisted and conspired with Richard in the financial elder abuse of Mary. Joan was substituted in as petitioner after Mary's death. Debtor appeared pro se at the seven-day trial.

The state court entered a tentative Decision After Trial on May 9, 2011. It found by "clear and convincing evidence" that Richard committed financial elder abuse against Mary by his conduct concerning: (1) the sale of Mary's one-half interest to Debtor "for a possibly below market price at the time when she was incapable of intelligent or reasoned discussion[;]" and (2) the use of the sale proceeds to satisfy loans for which he should have been solely responsible. In addition, the court found that Richard's actions were malicious, which provided a basis for punitive damages.

As to Debtor, the state court found his testimony deceptive, but concluded that Joan had not shown by clear and convincing evidence that he conspired to commit financial elder abuse, and proposed judgment in Debtor's favor. The court declined to award punitive, double or other exemplary damages against Richard due to Joan's "unclean hands" for her involvement in the transaction — she accepted $59,000 in "hush money" and funded only a $31,000 annuity for Mary.

Joan later requested a statement of decision, asking the state court to address the controverted issue of whether she was required to prove the alleged conspiracy between Debtor and Richard by clear and convincing evidence or by a preponderance of

-5-

the evidence. Although Joan's request indicated that a hearing would be held on it at a date and time to be determined, the state court never scheduled a hearing. Debtor did not file a counterproposal to Joan's request for a statement of decision.

The state court ordered Joan to prepare and file a proposed statement of decision, including a standard of proof finding concerning Debtor, within 30 days. Joan complied. Debtor did not object to Joan's proposed statement of decision or the failure to hold a hearing on her request.

On October 5, 2011, the state court entered Joan's proposed statement of decision with some minor modifications ("Statement of Decision"). The Statement of Decision differed in some respects from the Decision After Trial entered on May 9. The state court found that the proper standard of proof for the financial elder abuse and conspiracy claims against Debtor was a preponderance of the evidence, not a clear and convincing standard. Based on a preponderance standard of proof, the state court made the following findings:

- Debtor knowingly conspired with Richard to "take" Mary's one-half of the Property for "a wrongful use" (i.e., deprivation of the full value of her half of the Property, a minimum of $300,000) for their own benefit and purposes;

- Debtor assisted Richard in taking and retaining Mary's one-half of the Property for "a wrongful use" within WELF. & INST. CODE § 15610.30;

- Debtor "bought" Mary's one-half interest for below market price and no consideration at a time when she was incapable of understanding she was selling her home of fifty years;

- Debtor's affirmative acts (preparing documents for the transaction and his entity providing financing for it, and the substantially profitable $1 million sale to Richard's son sixteen months later) were in furtherance of the agreement with Richard to commit financial elder abuse, which ultimately resulted in damage to Mary;

-6-

- Debtor knew he was taking the full value of Mary's half of the Property for inadequate consideration, in that Mary was to receive a mere $31,000 annuity while Richard was to have over $200,000 in loans paid from the $300,000 sale proceeds, thus frustrating Mary's testamentary plan;

- since Debtor arranged for the refinancing loan of $438,000, he knew these proceeds would not be used to fully fund an annuity of $300,000 for Mary, but rather only $31,000; and

- because the notary of the grant deed was associated with Debtor, it was reasonable to infer that Debtor played a role in the forgery.

As part of Joan's damages award, the state court imposed double damages under CAL. PROB. CODE § 859[5] based on Debtor's and Richard's bad faith wrongful taking of Mary's one-half of the Property. Joan was also awarded attorney's fees in accordance with WELF. & INST. CODE § 15657.5(a).[6] The state court made no mention in the Statement of Decision of its previous finding in its Decision After Trial of Joan's "unclean hands" as a basis for

---

[5] The version of CAL. PROB. CODE § 859 in effect and applied by the state court provided, in relevant part:

   If a court finds that a person has in bad faith wrongfully taken, concealed, or disposed of property belonging to the estate of a decedent, conservatee, minor, or trust, the person shall be liable for twice the value of the property recovered by an action under this part . . . .

[6] WELF. & INST. CODE § 15657.5(a) provides:

   (a) Where it is proven by a preponderance of the evidence that a defendant is liable for financial abuse, as defined in Section 15610.30, in addition to compensatory damages and all other remedies otherwise provided by law, the court shall award to the plaintiff reasonable attorney's fees and costs. The term "costs" includes, but is not limited to, reasonable fees for the services of a conservator, if any, devoted to the litigation of a claim brought under this article.

Under subsection (b), if the plaintiff can show "by clear and convincing evidence" that the defendant was guilty of "recklessness, oppression, fraud or malice," the plaintiff can also recover punitive damages.

-7-

disallowing punitive or double damages. By ultimately awarding double damages to her, the court apparently changed its initial decision on that issue.

The state court entered a judgment (drafted by Joan's counsel) on October 5, 2011 ("Judgment"). Joan was awarded actual damages of $653,423.31 and double damages of $1,306,946.62 (plus prejudgment interest on the $653,423.31 and attorney's fees) against Debtor and Richard. The court ultimately denied punitive damages against Richard, determining that the double damages allowed under CAL. PROB. CODE § 859 "sufficiently redresse[d] the wrong." Debtor appealed.

**B. Postpetition events**

While the appeal of the Judgment was pending, Debtor filed a chapter 7 bankruptcy case on December 29, 2011.

**1. Joan's nondischargeability complaint**

Joan timely filed her nondischargeability action against Debtor, alleging that the Judgment was excepted from discharge under § 523(a)(2)(A), (a)(4) and (a)(6). As part of his affirmative defenses, Debtor contended that the state court had found Joan guilty of "unclean hands," and therefore she was not entitled to double damages. The bankruptcy court stayed Joan's action while the parties pursued the appeal of the Judgment.

**2. The Court of Appeal decision**

On August 22, 2013, the California Court of Appeal affirmed the state court's decision finding Debtor liable for financial elder abuse under WELF. & INST. CODE § 15610.30 by a preponderance of the evidence but modified the damages awarded to Joan.

The appellate court rejected Debtor's argument regarding any

-8-

alleged prejudicial procedural errors committed by the state court; his claims either lacked merit or had been waived by failing to raise them previously. The appellate court noted that "[w]hile there were procedural irregularities in the conduct of the trial and post-trial proceedings, and [Debtor] was no doubt disadvantaged by not having legal representation to fully protect his interests, he assumed responsibility for his own defense and must be treated like any other party."

The appellate court also rejected Debtor's argument that double damages under CAL. PROB. CODE § 859 should not have been awarded based on the state court's earlier finding in its Decision After Trial that Joan had "unclean hands." The state court was not bound by that earlier determination when it issued the Statement of Decision, which controlled and made "no finding or mention of unclean hands in connection with the award of double damages against [Debtor] or Richard."

However, the appellate court did find that the state court erred in its calculation of damages as to Debtor, finding that only $258,617.83 was subject to doubling, and that the prejudgment interest had been awarded on an incorrect amount. Thus, the Judgment as to Debtor was modified to reduce Joan's recovery to $517,235.66, plus prejudgment interest of $78,447.71.

**3.    Motion for summary judgment on the § 523(a)(6) claim**

Subsequently, Joan moved for summary judgment on her § 523(a)(2)(A) and (a)(6) claims ("MSJ").[7]  Only the § 523(a)(6)

---

[7] Joan was unsuccessful in her earlier motion for summary judgment on her § 523(a)(4) claim; judgment was granted for Debtor
(continued...)

claim is at issue on appeal. In essence, Joan contended that because the findings by the state court — that Debtor had in bad faith taken Mary's property in violation of WELF. & INST. CODE § 15610.30 and CAL. PROB. CODE § 859 — established the elements for a "willful and malicious injury" under § 523(a)(6), and because the Judgment was now final, she was entitled to summary judgment on the basis of issue preclusion. In support, Joan attached the California Court of Appeal decision, the Statement of Decision, the Judgment and a copy of the 2002 grant deed.

Debtor opposed the MSJ, disputing Joan's argument that the elements for issue preclusion and § 523(a)(6) were met. To support his opposition, Debtor offered the Decision After Trial. As for issue preclusion, Debtor conceded the Judgment was final, but argued that because it was based on post-trial "procedural irregularities," it was not obtained "on the merits" and was therefore not entitled to preclusive effect. Debtor suggested that the state court was duped into signing Joan's proposed statement of decision, which contradicted its earlier ruling in the Decision After Trial that Debtor was not liable for financial elder abuse and that Joan was guilty of unclean hands. Debtor further argued that the Statement of Decision was adopted only by default, because Debtor did not know to object and/or request a hearing. Debtor contended that Joan had also failed to establish that his intent to injure Mary had been decided; the state court

---

[7](...continued)
on April 23, 2014. Joan's § 523(a)(2)(A) claim was dismissed on July 11, 2014, after the bankruptcy court ruled in her favor on her § 523(a)(6) claim.

-10-

did not deal with his subjective motive or find that his conduct was willful in intending to injure Mary as required under § 523(a)(6).

As for Joan's § 523(a)(6) claim, Debtor argued that the state court had addressed the "malicious" element, declining to find that his conduct was malicious. Thus, this finding supported summary judgment in his favor.

In reply, Joan contended that the "malicious" prong under § 523(a)(6) was satisfied by the state court's findings that Debtor knowingly conspired and assisted Richard in the wrongful taking of Mary's one-half interest in the Property and converting it to their own use and benefit.

**4.     The bankruptcy court's ruling on the MSJ**

The bankruptcy court entered its oral ruling on the MSJ at the hearing on May 30, 2014. After carefully reciting the facts of the case and the findings made by the state court, the bankruptcy court determined that issue preclusion applied to the Judgment:  (1) it was final and on the merits; (2) the issue of financial elder abuse was actually and necessarily decided; and (3) the parties were the same.

Recognizing that it was required to find a specific type of intent to satisfy a claim under § 523(a)(6), the bankruptcy court determined that the state court's findings for the financial elder abuse claim against Debtor satisfied the willful and malicious standard:

> Grenier is no innocent bystander whose non-dischargeable liability is being imputed to him.  Rather, as the Superior Court found, he was an active co-conspirator in a financial elder abuse claim.  As such, he acted willfully since he knew that the sale he was helping to

-11-

orchestrate would financially injure Mary. His conduct was intentional and deliberate, as he assisted in preparing and financing the sale of the San Francisco property, and since his trust was buying the one-half interest at a significantly below market price, he knew or had a belief that Mary would be financially injured from this scheme. His conduct was also malicious since it was a wrongful act; i.e., elder abuse, done intentionally, which necessarily caused Mary financial injury and was done without any just cause or excuse.

Hr'g Tr. (May 30, 2014) 20:13-21:1.

An order granting the MSJ on Joan's § 523(a)(6) claim was entered on June 4, 2014, and a judgment excepting the Judgment debt of $517,235.66, plus prejudgment interest of $78,447.41, from discharge under § 523(a)(6) was entered on August 5, 2014. Debtor timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err when it granted Joan summary judgment on her § 523(a)(6) claim by applying issue preclusion to the Judgment?

## IV. STANDARDS OF REVIEW

The bankruptcy court's order granting summary judgment is reviewed de novo. Shahrestani v. Alazzeh (In re Alazzeh), 509 B.R. 689, 692 (9th Cir. BAP 2014). "Viewing the evidence in the light most favorable to the non-moving party, we must determine 'whether there are any genuine issues of material fact and whether the trial court correctly applied relevant substantive law.'" New Falls Corp. v. Boyajian (In re Boyajian), 367 B.R. 138, 141 (9th Cir. BAP 2007)(quoting Tobin v. San Souci Ltd.

-12-

P'ship (In re Tobin), 258 B.R. 199, 202 (9th Cir. BAP 2001)).

The availability of issue preclusion is a question of law we review de novo. Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193, 1198 (9th Cir. 2012). If issue preclusion is available, the bankruptcy court's decision to apply it is reviewed for abuse of discretion. Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007). Under that standard, we reverse where the bankruptcy court applied an incorrect legal rule or where its application of the law to the facts was illogical, implausible or without support in inferences that may be drawn from the record. Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1258 (9th Cir. 2010)(citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc)).

## V. DISCUSSION

### A. Summary judgment standards

Summary judgment is appropriate where the movant shows that no genuine issue of material fact is in dispute and the movant is entitled to judgment as a matter of law. Rule 7056 (incorporating Fed. R. Civ. P. 56(a)). The court views the evidence in the light most favorable to the non-moving party in determining whether any genuine disputes of material fact exist and the movant is entitled to judgment as a matter of law. Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014).

### B. Issue preclusion standards

The doctrine of issue preclusion prohibits relitigation of issues adjudicated in a prior action. Child v. Foxboro Ranch Estates, LLC (In re Child), 486 B.R. 168, 172 (9th Cir. BAP 2013). Issue preclusion applies to dischargeability proceedings under

-13-

§ 523(a). <u>Grogan v. Garner</u>, 498 U.S. 279, 285 n.11 (1991) (preclusion principles apply in discharge proceedings under § 523(a) to preclude relitigation of state court findings relevant to the dischargeability determination). In determining the effect of a state court judgment, we must apply, as a matter of full faith and credit, the state's law of issue preclusion. <u>Gayden v. Nourbakhsh (In re Nourbakhsh)</u>, 67 F.3d 798, 800 (9th Cir. 1995); <u>Jung Sup Lee v. Tcast Commc'ns, Inc. (In re Jung Sup Lee)</u>, 335 B.R. 130, 136 (9th Cir. BAP 2005).

Under California law, a prior judgment is entitled to issue preclusive effect if all five of the following requirements are met:

(1) The issue sought to be precluded must be identical to that decided in the former proceeding;

(2) The issue must have been actually litigated in the former proceeding;

(3) The issue must have been necessarily decided in the former proceeding;

(4) The decision in the former proceeding must be final and on the merits;

(5) The party against whom issue preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

<u>Harmon v. Kobrin (In re Harmon)</u>, 250 F.3d 1240, 1245 (9th Cir. 2001); <u>Lucido v. Super. Ct.</u>, 51 Cal.3d 335, 341 (1990). In addition to the listed requirements, California also has the requirement that these five factors are found and the "application of issue preclusion furthers the public policies underlying the doctrine." <u>See</u> <u>In re Harmon</u>, 250 F.3d at 1245 (and cases cited therein).

The party asserting preclusion bears the burden of

-14-

establishing these threshold requirements. Id. This burden requires providing "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action. Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995), aff'd, 100 F.3d 110 (9th Cir. 1996). Any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the [issue preclusive] effect." Id.

**C. The bankruptcy court erred in applying issue preclusion to the Judgment.**

Debtor does not dispute that the parties are the same, thereby satisfying the fifth element. He does not dispute that the Judgment is final, which satisfies, in part, the fourth element. Debtor also does not appear to dispute the first element, that the issues involved in both proceedings are identical. See Lucido, 51 Cal.3d at 342 ("The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same.").

Debtor does dispute, however, that the Judgment was "on the merits," and contends that the issues of his "malicious" conduct or that his conduct was "without just cause or excuse" were either not decided or were decided in his favor by the state court.

**1. The Judgment was on the merits.**

Debtor contends the bankruptcy court erred in finding that the Judgment was on the merits, when in fact it was based on what the court allegedly recognized were "procedural irregularities." We disagree.

The state court held a seven-day trial on the financial elder

-15-

abuse claim against Debtor, who appeared and testified. Although Debtor has suggested the state court was duped into signing Joan's proposed statement of decision, nothing in the record establishes that is the case. It appears the state court simply changed its mind as to Debtor's liability when it applied the lower (and proper) standard of preponderance of the evidence as opposed to a clear and convincing standard.

In addition, nothing in the record reflects that, if Debtor's accusation were true, he has moved the state court for reconsideration or raised some argument respecting fraud upon the court. Further, while the appellate court acknowledged that Debtor representing himself put him at a disadvantage, it rejected his argument that the post-trial procedural irregularities prejudiced him sufficiently for reversal. Finally, Debtor has failed to cite a case where a party received a seven-day trial and, as a result of procedural irregularities, the judgment entered by the prior court was not considered "on the merits" and not entitled to preclusive effect.

**2.  The issue of Debtor's subjective state of mind was not actually litigated or necessarily decided by the state court.**

Debtor contends the bankruptcy court erred by applying issue preclusion to the Judgment because the state court did not find his conduct to be "malicious," and because the state court never decided the issue of his motive for assisting Richard in the sale of the Property or his intent to injure Mary. We reject Debtor's first argument. The elements of a state court action are rarely identical to those for proving a willful and malicious injury. Nonetheless, issue preclusion will apply if the factual findings

-16-

by the state court establish that Debtor's violation of WELF. & INST. CODE § 15610.30 was a willful and malicious injury; no "malice" finding by the state court was necessary for Joan to establish her claim under § 523(a)(6).

However, we conclude that Joan failed to prove her claim because Debtor's subjective state of mind was not litigated in the financial elder abuse action or decided by the state court. The § 523(a)(6) calculus requires a subjective intent finding and not an objective or reasonable man evaluation of a debtor's conduct. Carrillo v. Su (In re Su), 290 F.3d 1140, 1143, 1145 (9th Cir. 2002).

The version of WELF. & INST. CODE § 15610.30 in effect at the time of this case and applied by the state court provided, in relevant part:

> (a) "Financial abuse" of an elder . . . occurs when a person or entity does any of the following:
>
> (1) Takes, secretes, appropriates, or retains real or personal property of an elder . . . to a wrongful use or with intent to defraud, or both.
>
> (2) Assists in taking, secreting, appropriating, or retaining real or personal property of an elder . . . to a wrongful use or with intent to defraud, or both.
>
> (b) A person or entity shall be deemed to have taken, secreted, appropriated, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates or retains possession of property in bad faith.
>
> (1) A person or entity shall be deemed to have acted in bad faith if the person or entity knew or should have known that the elder . . . had the right to have the property transferred or made readily available to the elder . . . or to his or her representative.

In other words, a use is "wrongful" if conducted in bad faith — that is, if a person knew or should have known that the elder had

-17-

a right to have the property transferred or made readily available, and it is obvious to a reasonable person that the taker was not entitled to the elder's property.[8]

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." Both willfulness and maliciousness must be proven in order to apply § 523(a)(6). Ormsby v. First Am. Title Co. of Nev. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010). "A 'willful' injury is a 'deliberate or intentional **injury**, not merely a deliberate or intentional **act** that leads to injury.'" Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008)(quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)(emphasis in original)). The willful injury requirement under § 523(a)6) "is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." In re Ormsby, 591 F.3d at 1206.

"A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. Malice may be inferred based on the nature of the wrongful act." Id. at 1207. The willful injury must be established, however, before malice may be inferred. See id. (citing Thiara v. Spycher Bros. (In re Thiara),

--------

[8] WELF. & INST. CODE § 15610.30 was amended in 2009, eliminating the requirement of bad faith, defining "wrongful use" to mean that the person or entity who took the elder's property knew or should have known that the conduct was likely to be harmful to the elder, and adding the conduct of "undue influence" with subsection (3). See Stebley v. Litton Loan Servicing, LLP, 202 Cal.App.4th 522, 527 (2011)(recognizing that bad faith is no longer required in elder abuse cases).

-18-

285 B.R. 420, 434 (9th Cir. BAP 2002)("the 'done intentionally' element of a 'malicious' injury brings into play the same subjective standard of intent which focuses on . . . knowledge of harm to the creditor.")).

Unfortunately, neither party cited or addressed our decision in Van Zandt v. Mbunda (In re Mbunda), 484 B.R. 344 (9th Cir. BAP 2012). There, we analyzed the plain language of WELF. & INST. CODE § 15610.30, determining that a claim for financial elder abuse must include: (1) a wrongful use; (2) an undue influence/unfair advantage; or (3) an intent to defraud. Id. at 358. We concluded that the first two types of conduct covered — wrongful use and undue influence/unfair advantage — do not require any motive to injure or any belief that injury will occur. Id. As such, we held that pleading a claim under WELF. & INST. CODE § 15610.30 based on wrongful use or undue influence fails to state a § 523(a)(6) claim because neither of these types of conduct is sufficient to establish the requisite willfulness. Id. at 358-59.

Without a copy of the state court complaint, we do not know what was pled against Debtor. In any event, the state court found that he had engaged in the conduct of "wrongful use," which fails to meet the willfulness element of § 523(a)(6). Finding a party liable for financial elder abuse based on such conduct does not require an inquiry into the party's subjective intent — i.e., whether Debtor had a subjective motive to inflict injury to Mary or believed that injury was substantially certain to result from his own conduct. In re Ormsby, 591 F.3d at 1206.

Nonetheless, a willful and malicious injury may still be established if the state court made any findings as to Debtor's

-19-

subjective intent to injure Mary, in addition to his conduct of "wrongful use." We conclude that the state court made no such additional findings. While it found that Debtor "knowingly" assisted and conspired with Richard to take Mary's one-half of the Property for a wrongful use, the state court made no finding that he **intended to cause injury to Mary**. The only finding that perhaps supports Joan is that Debtor knew he was taking the full value of Mary's half of the Property for inadequate consideration, in that Mary was to receive only a $31,000 annuity from the $300,000 in sale proceeds. Although a close call, we believe this finding is inadequate to meet the critical element of the subjective state of mind required to support a claim under § 523(a)(6). Further, it is not evident that this finding was necessary to the Judgment.

Joan has not established that Debtor's subjective intent was at issue in the financial elder abuse action; she was not required to prove Debtor's subjective intent to injure Mary in order to prove his liability based on "wrongful use" under WELF. & INST. CODE § 15610.30. Accordingly, the issue of Debtor's subjective intent was neither actually litigated nor necessarily decided by the state court. Thus, the bankruptcy court erred in applying issue preclusion to the Judgment.

Because the material fact of Debtor's subjective intent to injure Mary is still at issue, Joan was not entitled to summary judgment on her § 523(a)(6) claim on the basis of issue preclusion. The ultimate determination of Debtor's state of mind must remain a finding to be made by the bankruptcy court at trial. Given our determination here, we need not address Debtor's

-20-

arguments respecting the bankruptcy court's failure to consider his affirmative defense of "unclean hands" on the part of Joan or that the court erred by applying issue preclusion to a state court judgment that imposed a form of vicarious liability.

## VI. CONCLUSION

Based on the foregoing reasons, we VACATE the bankruptcy court's order granting summary judgment and REMAND this matter for further proceedings.