FILED

FEB 20 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. CC-14-1185-PaTaD |
| | CC-14-1258-PaTaD |
| MARK JENKINS and | (Cross-Appeals) |
| ROXANNA RAMEY, | |
| | Bankr. No. 11-59152-ER |
| Debtors. | |
| | Adv. Proc. 12-01365-ER |
| MARK JENKINS, | |
| Appellant and | |
| Cross-appellee, | |
| v. | **M E M O R A N D U M**[1] |
| ROBERT MITELHAUS, | |
| Appellee and | |
| Cross-appellant. | |

Argued and Submitted on January 22, 2015
at Pasadena, California

Filed - February 20, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Ernest M. Robles, Bankruptcy Judge, Presiding

Appearances:    David Brian Lally argued for appellant/cross-appellee Mark Jenkins; Mark T. Young of Donahoe & Young LLP argued for appellee/cross-appellant Robert Mitelhaus.

Before: PAPPAS, TAYLOR and DUNN, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Chapter 7[2] debtors Mark Jenkins ("Jenkins") and Roxanna Ramey ("Ramey" and together, "Debtors") appeal the judgment and amended judgment of the bankruptcy court determining that Jenkins' debt owed to creditor Robert Mitelhaus ("Mitelhaus") is excepted from discharge under § 523(a)(4) and (a)(6). Mitelhaus cross-appeals the amount of judgments and whether Ramey is also liable for the debt that is excepted from discharge. We REVERSE that portion of the judgments determining that Debtors' debt to Mitelhaus is excepted from discharge under § 523(a)(4), AFFIRM the judgments' determination that the debt is excepted from Jenkins' discharge under § 523(a)(6), and AFFIRM the bankruptcy court's determination of the amount of the nondischargeable debt in the judgments and that Ramey is not liable for that exception to discharge.

**FACTS**

Nutec Enterprises, Inc. ("Nutec") is a Nevada corporation doing business as a real estate brokerage in California. Ramey is its president, owns 100 percent of the shares of Nutec, and acts as a real estate salesperson. Jenkins, her spouse, is vice-president of Nutec and serves as its real estate broker.

On June 11, 2003, Nutec and Mitelhaus, a real estate salesperson, entered into an Independent Contractor Agreement (the "Contract"). Mitelhaus agreed to work for Nutec in exchange

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure 1–86.

for payment of commissions for any real estate sold or leased when he acted as agent for the buyer or seller. Mitelhaus worked with Nutec from June 2003 through July 19, 2005, when Nutec terminated the Contract.

Shortly after Nutec terminated its relationship with Mitelhaus, KS Management, LLC ("KS") sued Nutec, Jenkins, and Mitelhaus in connection with a lease transaction (the "KS Lawsuit"). Mitelhaus alleges that he made a demand on Nutec to defend him based on Nutec's errors and omissions insurance policy but Nutec refused. In November 2005, Nutec tendered the defense of the KS Lawsuit claim to its insurance carrier, which refused the claim because it arose during a period when Nutec had allowed the policy to lapse for failure to pay premiums. As a result, Mitelhaus alleges that he was required to defend the KS Lawsuit with his own resources, expending $77,284.50 in attorney's fees and costs in the process. KS ultimately dropped the lawsuit.

On December 21, 2007, Mitelhaus filed a complaint in state court against Nutec, Jenkins, and Ramey for breach of contract, breach of the covenant of good faith and fair dealing, common counts, and fraud. Mitelhaus v. Nutec Enters., Inc., case no. BC382703 (Los Angeles Superior Court). Among the damages sought by Mitelhaus were withheld commissions in the amount of $71,202.38 for four commissions (the "Four Commissions") that he alleged became payable to him after he was terminated; for other withheld commissions of approximately $66,000 relating to leases regarding the Nasr property (the "Nasr Commissions"); for Mitelhaus' costs of defending the KS Lawsuit ("KS Lawsuit Fees"); for a commission on the Nutec Office Lease ("Office Lease"); for

-3-

violation of labor laws; and for reimbursement of the insurance premiums he paid to Nutec.

The parties jointly moved to submit the dispute to arbitration, which the state court approved. An arbitration hearing took place in July 2009 over three days. Nutec, Jenkins, and Ramey were represented by counsel, as was Mitelhaus. Six witnesses testified at the hearing. On July 20, 2009, the arbitrator issued an Award of Arbitrator (the "Award"). Among other things, the Award found and concluded that:

- Nutec had breached the Contract by withholding the Four Commissions that were due to Mitelhaus. Mitelhaus was awarded $71,202.18 in damages for this breach.

- Mitelhaus did not present evidence on violations of the Labor Code. No damages were awarded on this claim.

- Nutec did not commit fraud in withholding the insurance premiums from Mitelhaus' compensation. The Award opined, however, that "the Arbitrator finds the conduct [of Jenkins and Ramey] to be deplorable, but not actionable." Mitelhaus was awarded $3,197 as a flat fee for reimbursement of his payments (the "Flat Fee").

- Mitelhaus was awarded $62,001.95 and $15,282.55 for the KS Lawsuit Fees.

- Mitelhaus was not entitled to a commission for the Office Lease.

- Jenkins was personally liable for damages in the Award.

- Ramey was not the alter ego of Nutec as alleged by Mitelhaus and, thus, was not liable for damages under the Award.

- Mitelhaus was the prevailing party and was entitled to

-4-

recover his attorney's fees and costs.

- Mitelhaus had waived his right to seek compensation for the Nasr Commissions.

In sum, the arbitrator awarded Mitelhaus actual damages of $151,683.88,[3] prejudgment interest of $49,184.80, costs of arbitration of $12,750.00, and attorney's fees and costs of $80,742.94 against both Nutec and Jenkins.

On August 5, 2009, Mitelhaus filed an unopposed motion in the Superior Court to confirm the Award. In a September 23, 2009 order granting this motion (the "State Court Judgment"), the state court adjudged Jenkins and Nutec liable to Mitelhaus for $289,526.62.[4] The State Court Judgment was not appealed.

On November 10, 2009, Nutec filed a petition for relief under chapter 11. Its reorganization plan was confirmed on September 10, 2010, and the bankruptcy case was closed on March 25, 2011. Mitelhaus was scheduled as Nutec's largest unsecured creditor for $314,393.96, and the confirmed plan proposed to pay him $34,583.33. Apparently, no payments have been received by Mitelhaus under the Nutec plan.

Debtors filed a petition under chapter 7 on November 30,

_____

[3] The $151,683.88 (the "Award") is composed of $71,202.38 (Four Commissions) + $3197.00 (Flat Fee) + $62,001.95/$15,282.55 (KS Lawsuit Fees).

[4] The $289,526.62 awarded in the State Court Judgment is composed of $151,683.88 (the "Award") + $49,184.80 (prejudgment interest) + $12,750 (arbitration fees) + $80,742.94 (attorney fees for arbitration) + $1,540.00 (attorney fees for confirmation) - $6,375.00 (arbitration fees that Nutec reimbursed to Mitelhaus before entry of the State Court Judgment).

-5-

2011. Their schedule F listed a debt of $289,526.62 to Mitelhaus arising from the State Court Judgment.

Mitelhaus filed an adversary complaint against Debtors on March 8, 2012, asking the bankruptcy court to determine that the State Court Judgment was excepted from discharge under § 523(a)(4) and (a)(6).

Debtors answered the complaint and on November 13, 2012, Mitelhaus filed a motion for summary judgment arguing that the Award was preclusive as to all of the required elements for an exception to discharge under both § 523(a)(4) and (a)(6). The bankruptcy court denied the motion without a hearing on February 4, 2013, principally because the arbitrator had not made the findings concerning Debtors' intent required to establish an exception to discharge under either § 523(a)(4) or (a)(6).

A three-day trial in the adversary proceeding was held in October 2013. After taking the matter under advisement, the bankruptcy court entered a Memorandum of Decision ("First Memorandum") and Judgment ("First Judgment") on April 2, 2014. Among the rulings made by the bankruptcy court were:

- Mitelhaus' debt was excepted from discharge as to Jenkins under § 523(a)(4) based on larceny. In particular, the bankruptcy court determined that Jenkins' withholding of the Four Commissions from Mitelhaus constituted a felonious taking done with the intent to deprive Mitelhaus of the commissions and, therefore, was larceny.

- Mitelhaus' debt was also excepted from discharge pursuant to § 523(a)(6) because Jenkins' had willfully and maliciously withheld the Four Commissions.

-6-

- The attorney's fees and costs awarded in the arbitration were also excepted from Jenkins' discharge.

- The State Court Judgment was dischargeable as to Ramey.

The First Judgment determined that $163,057.32[5] of the debt evidenced by the State Court Judgment was excepted from Jenkins' discharge under § 523(a)(4) and (a)(6).

On April 16, 2014, Mitelhaus filed a motion for reconsideration under Civil Rule 59(e), incorporated in Rule 9023. The motion asked the bankruptcy court to reconsider: (1) whether the bankruptcy court was bound to deem the full amount of the debt in the State Court Judgment nondischargeable; (2) whether the attorney's fees awarded to Mitelhaus for the KS Lawsuit were excepted from discharge; (3) whether the Nasr Commissions should also be included in the debt excepted from discharge; (4) whether Mitelhaus should recover prejudgment interest on the State Court Judgment; and (5) whether Ramey should also be liable on the debt.

Later that same day, Jenkins filed a notice of appeal of the First Judgment. Under the rules, Jenkins' appeal was tolled until entry of the bankruptcy court's decision on the reconsideration motion. See Rule 8002(b).

The bankruptcy court entered a decision disposing of Mitelhaus' reconsideration motion without a hearing on May 5,

---

[5] The $163,057.32 is composed of $71,202.38 (Four Commissions) + $6,375.00 (one-half of the arbitration fees) + $3,197 (Flat Fee) + $80,742.94 (attorney fees for arbitration) + $1,540.00 (attorney fees for confirmation). The First Judgment did not include any pre- or post-judgment interest on the State Court Judgment.

2014 (the "Amended Memorandum"). The Amended Memorandum declined to reconsider the amounts excepted from Jenkins' discharge in the First Judgment under § 523(a)(4) and (a)(6) because, contrary to the requirements of Civil Rule 59(e), the motion merely restated arguments previously made by Mitelhaus and neither presented newly discovered evidence nor established that any manifest error of fact or law had been made. The court also denied the request to reconsider its findings regarding the liability of Ramey. The court, however, granted the request in the reconsideration motion to add prejudgment interest of $24,124.48 to the First Judgment Award and, on its own initiative, added $84,667.75 in post-judgment interest as of April 2, 2014, with additional interest to accrue at $51.28 per day. In an Amended Judgment, the bankruptcy court determined that a debt of $271,849.55[6] was excepted from discharge under § 523(a)(4) and (a)(6) against Jenkins only.

The reconsideration motion having thus been resolved by the bankruptcy court, Mitelhaus filed a timely notice of cross-appeal of the First Judgment and Amended Judgment on May 19, 2014.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

---

[6] The $271,849.55 is composed of $71,202.38 (Four Commissions) + $3,197.00 (Flat Fee) + $24,124.48 (prejudgment interest) + $6,375.00 (one-half of arbitration fees) + $80,742.94 (attorney fees for arbitration) + $1,540.00 (attorney fees for confirmation) + $84,667.75 (post-judgment interest).

## ISSUES

Whether the bankruptcy court erred in declaring Jenkins' debt to Mitelhaus excepted from discharge under § 523(a)(4) and (a)(6).

Whether the bankruptcy court erred in denying summary judgment to Mitelhaus.

Whether the bankruptcy court erred in deciding that Ramey was not liable for the excepted debt to Mitelhaus.

## STANDARDS OF REVIEW

In reviewing a bankruptcy court's determination of an exception to discharge, we review its findings of fact for clear error and its conclusions of law de novo. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009). The bankruptcy court's denial of summary judgment is reviewed de novo. Desertrain v. City of L.A., 754 F.3d 1147, 1153 (9th Cir. 2014); Garske v. Arcadia Fin., Ltd. (In re Garske), 287 B.R. 537, 541 (9th Cir. BAP 2002). De novo review requires that we consider a matter anew, as if no decision had been rendered previously. United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988); B-Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225, 229 (9th Cir. BAP 2008).

## DISCUSSION

### I.

**The bankruptcy court erred in determining that the debt owed to Mitelhaus for the Four Commissions was excepted from discharge under § 523(a)(4).**

Section 523(a)(4) provides an exception to discharge for a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" By its terms, § 523(a)(4)

may apply in one of three circumstances: when a debtor engages in fraud while acting in a fiduciary capacity, or when a debtor commits an embezzlement or larceny.

In Mitelhaus' complaint in the adversary proceeding and in his arguments to the bankruptcy court, he sought an exception to discharge solely because, he alleged, Jenkins had committed larceny for purposes of § 523(a)(4). In its decision, the bankruptcy court explained the legal standard required to establish larceny:

> The Ninth Circuit has established that "[f]or purposes of section 523(a)(4), a bankruptcy court is not bound by the state law definition of larceny, but, rather, may follow federal common law, which defines larceny as a 'felonious taking of another's personal property with intent to convert it or deprive the owner of the same.'" In re Ormsby, 591 F.3d 1199, 1205 (9th Cir. 2010), citing 4 Collier on Bankruptcy ¶ 523.10[2] (15th ed. 2008). "Felonious" for purposes of ¶ 523(a)(4) is defined as "wrongful; . . . without excuse [or] color of right." Ormsby, 591 F.3d at 1205 (citations omitted).

First Memorandum at 5. Applying this standard, the bankruptcy court reasoned that, by withholding the Four Commissions from Mitelhaus, Jenkins had committed a "felonious taking" for purposes of § 523(a)(4). We conclude that the bankruptcy court incorrectly applied the Ormsby standard.

The full text of the discussion in In re Ormsby cited by the bankruptcy court is as follows:

> Section 523(a)(4) prevents discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). "For purposes of section 523(a)(4), a bankruptcy court is not bound by the state law definition of larceny but, rather, may follow federal common law, which defines larceny as a 'felonious taking of another's personal property with intent to convert it or deprive the owner of the same.'" 4 Collier on Bankruptcy

¶ 523.10[2] (15th ed. rev. 2008).[4] [Note 4:] Felonious is defined as "'proceeding from an evil heart or purpose; malicious; villainous . . . Wrongful; (of an act) done without excuse of color of right.'" Elliott v. Kiesewetter (In re Kiesewetter), 391 B.R. 740, 748 (Bankr. W.D. Pa. 2008) (quoting Black's Law Dictionary (8th ed. 2004)).

In re Ormsby, 591 F.3d at 1205 & n.4. As can be seen from this excerpt, a "felonious taking" refers to a situation in which a debtor comes into possession of property of another by unlawful means; it does not refer to the subsequent withholding of property from its alleged owner. This is made clear in the Ormsby court's citation to Collier on this topic, which explains:

> Larceny is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner. **As distinguished from embezzlement, the original taking of the property must be unlawful. . . .** Section 523(a)(4) excepts from discharge debts resulting from the fraudulent appropriation of another's property, whether the appropriation was unlawful at the outset, and therefore a larceny, or whether the appropriation took place unlawfully after the property was entrusted to the debtor's care, and therefore was an embezzlement.

4 COLLIER ON BANKRUPTCY ¶ 523.10[2] (Lawrence P. King, 15th ed. rev. 2008) (emphasis added).[7] Simply put, for purposes of § 523(a)(4), larceny only occurs when the debtor first comes into unlawful possession of the property of another. Werner v. Hoffman, 5 F.3d 1170, 1172 (8th Cir. 1993); Kaye v. Rose (In re Rose), 934 F.2d 901, 904 (7th Cir. 1991).

The facts in Ormsby demonstrate that a larceny must be based on the debtor's unlawful initial possession of property. Ormsby

---

[7] This text was retained intact in the most recent version of this authority. 4 COLLIER ON BANKRUPTCY ¶ 523.10[2] (Alan N. Resnick and Henry J. Sommer, eds. 16th ed. 2009).

owned a small real estate title company. A much larger title company, FATCO, had developed extensive databases and organization of title records that greatly simplified title searches such as those Ormsby conducted. Ormsby contracted to access the databases ("plants") developed for the period after 2000, but did not subscribe to access the plants for earlier years. Ormsby hired McCaffrey, who had access to the earlier plants and, through McCaffrey, obtained copies of the earlier plants that Ormsby then wrongfully used in his title search business. In characterizing the debtor's conduct, the Ormsby court concluded,

> When he started Inter-County, [Ormsby] purchased the rights to use the title plant for 2000 until the present, demonstrating that he was aware of the lawful means of obtaining access to them. Rather than purchasing the rights to the title plants for the 1900s, he hired McCaffrey away from a competing title company and discussed with him the importance of the title plants to a new title company. While McCaffrey still had access to the plants that FATCO possessed, Ormsby encouraged, cooperated, and assisted McCaffrey's removal of the plants and their reproduction. Of particular note, Ormsby sent the microfiche containing the plants to a non-local copying service, likely to avoid detection. Based on these facts found by the state court, Ormsby's conduct constituted larceny within the federal meaning of the term; accordingly under section 523(a)(4), his debt cannot be discharged.

In re Ormsby, 591 F.3d at 1205-06.

Here, in contrast to Ormsby, the bankruptcy court determined that Nutec had come into possession of the Four Commissions lawfully:

> Both Jenkins and Ramey testified that when a file for a transaction was complete and reviewed, a commission disbursement or CDA would be issued to escrow, which would allow the agent to be paid directly by the escrow company. . . . Ramey further testified that although rare, some escrow companies did not accept CDAs. [] Consequently, in those circumstances, the escrow

-12-

> company would pay all of the commissions directly to Nutec, which presumably would then disburse the agent's share.
>      This apparently is what happened with respect to the [Four Commissions], because both Jenkins and Ramey testified that Nutec received checks for these transactions from escrow.

First Memorandum at 6 (emphasis added). Because the bankruptcy court determined that the Four Commissions were paid to Nutec by the escrow company apparently in compliance with that company's policies, Nutec came into lawful possession of those commissions. As a result, that Jenkins decided to withhold payment of the Four Commissions to Mitelhaus, while perhaps wrongful, was not a felonious taking for purposes of the federal standard for larceny under § 523(a)(4).[8]  On this record, we conclude that the bankruptcy court erred in determining that the $71,202.38 debt represented by the Four Commissions was excepted from  discharge as a larceny pursuant to § 523(a)(4).[9]

---

[8] We need not speculate whether, on these facts, some other basis than larceny would support an exception to discharge under § 523(a)(4).  Mitelhaus' complaint only sought exception to discharge under the larceny provision of § 523(a)(4).  Consistent with this, the parties jointly stipulated in the Pre-trial Stipulation that the bankruptcy court should consider an exception to discharge under "11 U.S.C. §523(a)(4) because the debt arose through larceny pursuant to 11 U.S.C. § 523(a)(4)."  In short, there is nothing in the record to indicate that the bankruptcy court considered another ground for an exception under § 523(a)(4), nor do we.

[9] For similar reasons, we conclude that the bankruptcy court erred in excepting from discharge under § 523(a)(4) the Flat Fee of $3,197.  These premiums were paid by Mitelhaus to Nutec via twenty-three deductions of $139 from his commission earnings.  Mitelhaus has not argued, and there is nothing in the record before us to establish, that Nutec came into unlawful possession
(continued...)

-13-

## II.

**The bankruptcy court did not err in determining that the withholding of the Four Commissions was a debt excepted from discharge under § 523(a)(6).**

A creditor bears the burden of proving that its claim is excepted from discharge under § 523(a)(6) by a preponderance of the evidence. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1246 (9th Cir. 2001); see also Grogan v. Garner, 498 U.S. 279, 284 (1991). Section 523(a)(6) provides: "(a) A discharge under 727 . . . of this title does not discharge an individual debtor from any debt — . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity." Whether a particular debt is for willful and malicious injury by the debtor to another, or to the property of another, requires application of a two-pronged test: the creditor must prove that the debtor's conduct in causing the injuries was both willful and malicious. Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 711 (9th Cir. 2008) (requiring the application of a separate analysis for each prong of "willful" and "malicious").

To show that a debtor's conduct is willful requires proof that the debtor deliberately or intentionally injured the

---

[9](...continued) of the commissions from which these amounts were withheld. In addition, the Ninth Circuit has held that, to constitute larceny, federal common law larceny requires a taking of property without the consent of a party. United States v. Sellers, 670 F.2d 853, 854 (9th Cir. 1982); Van Zandt v. Mbunda (In re Mbunda), 2011 Bankr. LEXIS 2252, at *2 (Bankr. N.D. Cal. 2011), aff'd, 484 B.R. 344 (9th Cir. BAP 2012). Mitelhaus apparently consented to these deductions, and that Nutec failed to honor its commitment to use them to pay for insurance, even if intentional, was not a larceny under § 523(a)(4). See In re Mubunda, at *3.

-14-

creditor or the creditor's property, and that in doing so, the debtor intended the consequences of his act, not just the act itself. <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 60-61 (1998). The debtor must act with a subjective motive to inflict injury, or with a belief that injury is substantially certain to result from the conduct. <u>Id.</u> For conduct to be malicious, the creditor must prove that the debtor: (1) committed a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) was done without just cause or excuse. <u>Id.</u>

Whether a debtor's conduct is willful and malicious under § 523(a)(6) is a question of fact reviewed for clear error. <u>Banks v. Gill Distrib. Ctrs., Inc. (In re Banks)</u>, 263 F.3d 862, 869 (9th Cir. 2001).

Finally, and importantly for our review in this case, "to be excepted from discharge under § 523(a)(6) for breach of contract, the breach of contract must be accompanied by some form of 'tortious conduct' that gives rise to 'willful and malicious injury.'" <u>In re Jercich</u>, 238 F.3d at 1206.

The bankruptcy court found that Nutec, acting through Jenkins, withheld the Four Commissions from Mitelhaus willfully and maliciously. To satisfy the willfulness prong, the court found that withholding the Four Commissions was not authorized under Paragraph 8(E)(5) of the Contract, which permitted Nutec to withhold payments from Mitelhaus solely to offset expenses incurred related to those commissions. In this case, the offsets that Nutec and Jenkins argued should be applied against the Four Commissions were allegedly incurred as a result of the KS Lawsuit and the Nasr Commissions leases; they did not arise out of the

-15-

deals that generated the Four Commissions. The bankruptcy court concluded that this breach of contract evidenced Jenkins' belief that, as a result of his actions, injury was substantially certain to occur to Mitelhaus from the withholding of the Four Commissions.

As to the malicious prong, the bankruptcy court found that "the withholding of the Commissions was wrongful and intentional, because it was not authorized by contract or otherwise." First Memorandum at 8. In short, the bankruptcy court determined that the debt arising from the Four Commissions was excepted from discharge because Jenkins engaged in an intentional breach of contract.

As noted above, for a breach of contract to constitute a willful and malicious injury for purposes of § 523(a)(6), it must be accompanied by some form of "tortious conduct" that gives rise to "willful and malicious injury." In re Jercich, 238 F.3d at 1206. To determine if conduct is tortious, state law must be consulted. In re Bailey, 197 F.3d 997, 1000 (9th Cir. 1999).

In California, tort recovery for breach of contract is permitted only when "a defendant's conduct 'violates a fundamental public policy of the state.'" Rattan v. United Servs. Auto. Assoc., 84 Cal. App. 4th 715, 720 (2000). In an analogous context, the California Court of Appeals has held that "the prompt payment of wages due an employee is a fundamental public policy" in California. Gould v. Md. Sound Indus., Inc., 31 Cal. App. 4th 1137, 1142 (1995). The court observed,

> Public policy has long favored the full and prompt payment of wages due an employee. Wages are not ordinary debts. Because of the economic position of

-16-

the average worker and, in particular, his family, it is essential to the public welfare that he receive his pay promptly. Thus, the prompt payment of wages serves society's interest through a more stable job market, in which its most important policies are safeguarded.

Id.

Under California law, sales commissions payable pursuant to a contract are "wages." CAL. LABOR CODE § 200(a) ("'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."). DeLeon v. Verizon Wireless, LLC, 207 Cal.App.4th 800, 808 (2012) (citing CAL. LABOR CODE § 200); Steinhebel v. L.A. Times Commc'ns, LLC, 126 Cal.App.4th 696, 704-05 (2005) (sales commissions are wages).

Here, the bankruptcy court found that Jenkins' actions in withholding the Four Commissions from Mitelhaus were intentional and malicious because they were "not authorized by contract or otherwise." Such withholding necessarily caused injury to Mitelhaus by depriving him of his compensation. Wilfully depriving Mitelhaus of his compensation, when Nutec had the ability to pay,[10] was a tortious act. In re Jercich, 238 F.3d at

---

[10] Ramey testified that Nutec had the ability to pay Mitelhaus the Four Commissions at the time they were withheld from him:

Question: So there was no financial difficulty in paying Mr. Mitelhaus. It was being retained as a result of the lawsuit. . . .

Answer [Ramey]: I'm going to say due to the fact that it was 2005 and we were doing well, that yes, we did

(continued...)

-17-

1207.

The bankruptcy court's findings that Jenkins committed a willful and malicious injury to Mitelhaus by withholding the Four Commissions from him were not clearly erroneous, and thus, the bankruptcy court did not err in determining that the debt created by Jenkins' conduct was excepted from discharge under § 523(a)(6).

## III.

### The arguments raised in the cross-appeal lack merit.

In the cross-appeal, Mitelhaus asks us to review: (1) the bankruptcy court's refusal to enter a summary judgment; (2) the First Judgment and Amended Judgment because they did not include amounts claimed by Mitelhaus for the Nasr Commissions; (3) and the First Judgment and Amended Judgment because they did not deem Ramey liable for the debt excepted from discharge.

A. The bankruptcy court did not err in denying Mitelhaus' motion for summary judgment.

Mitelhaus appeals the bankruptcy court's denial of his motion for summary judgment, arguing that he established that the Award was excepted from discharge by virtue of the preclusive findings made by the arbitrator. In raising this issue, Mitelhaus apparently hopes to recover additional postpetition interest on the nondischargeable debt. Reviewing it de novo, we decline to disturb the bankruptcy court's decision.

---

[10](...continued)
not have a hardship, as far as a money hardship, to pay.

Trial Tr. 151:13-24, October 2, 2013.

To determine the preclusive effect of a California state court's findings in a judgment or order, the bankruptcy court must first determine if issue preclusion is available under California preclusion law.  28 U.S.C. § 1738 (the Full Faith and Credit Statute); Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985).  When state preclusion law controls, the discretion to apply the doctrine is exercised in accordance with state and federal law.  Khaligh v. Hadegh (In re Khaligh), 338 B.R. 817, 823 (9th Cir. BAP 2006), aff'd, 506 F.3d 956 (9th Cir. 2007).

Under California law, the party asserting issue preclusion has the burden of establishing the following "threshold" requirements for its availability:

First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001) (the "Harmon" factors).  In addition to these five factors, "[t]here is an equitable component to [issue preclusion]." Direct Shopping Network v. James, 206 Cal.App.4th 1551, 1562 (2012).  In other words, even where the five Harmon factors are met, the doctrine is to be applied "only where such application comports with fairness and sound public policy."  Smith v.

-19-

ExxonMobil Oil Corp., 153 Cal.App.4th 1407, 1414 (2007).

As discussed above, both § 523(a)(4) and (a)(6) require a showing that a debtor had the intent to commit the wrongful act. The bankruptcy court reviewed the Award, which was later confirmed by the State Court Judgment, and determined that the arbitrator had not made the necessary findings concerning Jenkins' intent to support an exception to discharge under § 523(a)(4) or (a)(6). We agree with this conclusion.

Mitelhaus argues that the Award found the requisite bad intent was established when the arbitrator decided that "Jenkins orchestrated the plan to wrongfully withhold commissions from Plaintiff as part of a plan or scheme to deprive Plaintiff of those commissions without a lawful basis for doing so." Rejecting Mitelhaus' contention, the bankruptcy court determined that the arbitrator made this statement in the context of determining Jenkins' liability for the acts of Nutec, and was not making any determination regarding Jenkins' intent. The bankruptcy court did not err in interpreting this cryptic finding in the Award to be inadequate to establish that Jenkins acted with the kind of intent required to establish larceny, willfulness or maliciousness.

On cross-appeal, Mitelhaus also argues that the bankruptcy court erred by not giving preclusive effect to the amount of the State Court Judgment. In this argument, Mitelhaus apparently misapprehends the function of the bankruptcy judge in applying issue preclusion in the context of an exception to discharge action.

Bankruptcy courts "have exclusive jurisdiction to determine

-20-

dischargeability of debts under §§ 523(a)(2) (fraud and deception); (a)(4) (fiduciary fraud, embezzlement, or larceny); and (a)(6) (willful and malicious injury to person or property)." Ackerman v. Eber (In re Eber), 687 F.3d 1123, 1128 (9th Cir. 2012); § 523(c)(1). The effect of this rule is that "the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of [a creditor's] debt." Brown v. Felsen, 442 U.S. 127, 129-30 (1979). As the Ninth Circuit has instructed, "final judgments in state courts are not necessarily preclusive in United States bankruptcy courts." Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 872 (9th Cir. 2005). In other words, while all federal courts have "broad discretion" in a decision to apply issue preclusion based on a state court judgment, Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979), that discretion is particularly expansive in exceptions to discharge under § 523(a)(2), (a)(4) and (a)(6). Rein v. Providian Fin. Corp., 270 F.3d 895, 904 (9th Cir. 2001) ("Bankruptcy Courts have exclusive jurisdiction over nondischargeability actions brought pursuant to 11 U.S.C. § 523(a)(2), (4), (6) and (15).").

Mitelhaus' position ignores that the Award and State Court Judgment established that Jenkins was indebted to Mitelhaus for multiple debts. Some of those debts, such as that for the Four Commissions, were caused by Jenkins' wrongful conduct that may be excepted from discharge. Other debts, including Jenkins' liability for the KS Lawsuit Fees, were not. That the bankruptcy court excluded the KS Lawsuit Fees awarded to Mitelhaus in the

State Court Judgment from the debts excepted from discharge was a legitimate exercise of its responsibility to examine the nature of each debt. Comer v. Comer (In re Comer), 723 F.2d 737, 740 (9th Cir. 1984) (holding that a bankruptcy judge should not "rely solely on state court judgments when determining the nature of a debt for purposes of dischargeability, if doing so would prohibit the bankruptcy court from exercising its exclusive jurisdiction to determine dischargeability."). Consequently, the bankruptcy court did not err when it exercised its independent judgment and determined that the KS Lawsuit Fees were in the nature of a debt that would not be excepted from discharge.

B. The bankruptcy court did not err in excluding the KS Lawsuit Fees and the Nasr Commissions from the exception to discharge award.

In addition to arguing that the KS Lawsuit Fees should be excepted from discharge as part of the Award and State Court Judgment, on appeal Mitelhaus asserts that the KS Lawsuit Fees should be excepted from discharge because they were recoverable damages under the California "doctrine of the tort of another."

> The tort of another doctrine holds that a person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred.

Prentice v. N. Am. Title Guar. Corp., 59 Cal.2d 618, 620 (1963).

Mitelhaus reasons that the withholding of insurance premiums from Mitelhaus' compensation was a tort, and the costs of defending the KS Lawsuit were therefore recoverable tort damages. Of course, the sole basis for this conclusion was that the bankruptcy court found the withholding was a larceny excepted

-22-

under § 523(a)(4). As explained above, however, we conclude that the bankruptcy court erred in excepting the Flat Fee from discharge under § 523(a)(4) because it was not a larceny.

The bankruptcy court considered Mitelhaus' tort of another argument twice. In denying the reconsideration motion, the court explained its reasoning why the KS Lawsuit Fees were not excepted from discharge:

> There was no showing that the KS [Lawsuit] Fees should be nondischargeable pursuant to § 523(a)(4) or (a)(6). In making that determination, the Court considered all the evidence set forth at trial and concluded that Plaintiff did not establish by a preponderance of the evidence that the wrongful taking of the errors and omissions insurance fees occurred prior to the initiation of the KS Action.

Amended Memorandum at 7.

The bankruptcy court determined in weighing of the evidence at trial that Mitelhaus had not established that Jenkins' alleged wrongful taking of the insurance premiums occurred before the KS Lawsuit Fees were incurred. We give deference to a trial court's findings after trial. Rule 8013; Cunning v. Rucker (In re Rucker), 570 F.3d 1155, 1159 (9th Cir. 2009). Consequently, the bankruptcy court did not err in determining that Mitelhaus had not established the necessary linkage between the alleged tort and the KS Lawsuit Fees and when it declined to hold those fees excepted from discharge under § 523(a)(4) and (a)(6).

Curiously, the cross-appeal also targets the bankruptcy court's refusal to adjudge an exception to discharge for the Nasr Commissions. Of course, neither the Award nor the State Court Judgment awarded damages to Mitelhaus for the Nasr Commissions.

In fact, the Award notes that Mitelhaus had "waived" any right to payment for those commissions, finding that Mitelhaus "was ready, willing and able to walk away from the Nasr lease commissions and [Mitelhaus] never really wanted Nutec to pursue collection of this commission." Award at 86. Simply put, because Mitelhaus did not establish that Nutec and Jenkins were liable to him for the Nasr Commissions, the bankruptcy court could not err in declining to recognize a claim that Mitelhaus had abandoned before the bankruptcy was filed. Before a debt can be excepted from discharge, there must be a debt. In re Perkins, 216 B.R. 220, 224 (Bankr. S.D. Ohio 1997).

In sum, we conclude that the bankruptcy court did not err in excluding from the exception to discharge the KS Lawsuit Fees and the Nasr Commissions.

C.   The bankruptcy court did not err in deciding that Jenkins' bad intent cannot be imputed to Ramey.

In the arbitration proceedings, Mitelhaus argued that Ramey was also liable for his damages because she was the "alter ego" of Nutec. However, no argument was made that Ramey should be liable for the wrongful acts of Jenkins. The arbitrator found that Mitelhaus had not shown that Ramey was the alter ego of Nutec and declined to award any damages against her.

In the adversary proceeding, Mitelhaus shifted his attack on Ramey by contending that Jenkins' wrongful acts can be imputed to Ramey on the basis of their agent-principal relationship, relying on the Panel's decision in Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa), 287 B.R. 515 (9th Cir. BAP 2002). In its First Memorandum, the bankruptcy court correctly observed that

-24-

Tsurukawa examined the standard for imputation of fraud to a debtor for acts committed by a spouse for purposes of establishing fraud under § 523(a)(2)(A). The bankruptcy court therefore rejected Mitelhaus' Tsurukawa argument because, in this case, Mitelhaus had sought an exception to discharge solely under § 523(a)(4) and (a)(6), not (a)(2)(A).

On appeal, Mitelhaus contends that the Panel's recent decision in Sachan v. Huh (In re Huh), 506 B.R. 257, 271-72 (9th Cir. BAP 2014) (en banc) has "clarified" the application of the Tsurukawa standard. Although Mitelhaus may be correct that In re Huh refines and explains the standard applicable for imputation of a spouse's fraudulent acts to the debtor, that decision is clearly limited to claims for a exception to discharge under § 523(a)(2)(A):

> More than a principal/agent relationship is required to establish a fraud exception to discharge. While the principal/debtor need not have participated actively in the fraud for the creditor to obtain an exception to discharge, the creditor must show that the debtor knew, or should have known, of the agent's fraud. Because this standard focuses on the culpability of the debtor, and not solely on the actions of the agent, we think it most properly comports with the recent holdings of the Supreme Court and the Ninth Circuit regarding discharge exceptions.

Id. at 271-72. There is no indication in In re Huh that the Panel intended its holding to impact the requirements for proving larceny or willful and malicious conduct under § 523(a)(4) or (a)(6), nor are we aware that any other court has applied In re Huh in such a manner.

As compared to § 523(a)(2)(A)'s focus on a debt "for fraud," the malicious conduct standard in § 523(a)(6) examines only the debtor's conduct and state of mind. As we have previously held

-25-

in an unpublished decision cited by the bankruptcy court,

> The <u>Tsurukawa</u> analysis is thus specific to fraud and to apply it to willful and malicious conduct is a quantum leap we are not prepared to make. The plain language of § 523(a)(6) excepts from discharge a willful and malicious injury by the debtor to another entity. . . . We harken back to [<u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 61-62 (1998)] where the Supreme Court, in the simplest terms, said a debtor must intend to injure the creditor before a claim is excepted from discharge based on malice. The Ninth Circuit in [<u>Carillo v. Su (In re Su)</u>, 290 F.3d 1140, 1144 (9th Cir. 2002)] has refined the willful prong to require the debtor to subjectively intend to inflict injury or to believe that injury is substantially certain to occur as a result of his conduct. . . . Behaviors and outcomes might be imputed, maybe even misrepresentations, but subjective thoughts cannot be. Under no accepted legal principles can subjective willfulness be rested upon Debtor.

<u>Luc v. Chien (In re Chien)</u>, 2008 WL 8240422, at *7 (9th Cir. BAP February 7, 2008). <u>In re Huh</u> did not vary this approach.

Here, while Mitelhaus argues that Ramey appeared to participate in some of Jenkins' decisions,[11] he never established that Ramey committed the acts with the requisite intent to inflict injury, or with the belief that injury was substantially certain to occur. Although under limited circumstances a spouse's fraud may be imputed to a debtor for § 523(a)(2)(A) purposes, a spouse's subjective malicious intent cannot be imputed to the debtor for § 523(a)(6) purposes.

The bankruptcy court did not err in deciding that Jenkins' bad acts could not be imputed to Ramey under § 523(a)(6).

---

[11] To be precise, there is no evidence in the record that Ramey significantly participated in Jenkins' decision to withhold the Four Commissions from Mitelhaus. Rather, as found by the arbitrator, Jenkins, as the broker, had the sole legal authority to supervise the business activities with regard to the payment of commissions. Award at 81.

**CONCLUSION**

We REVERSE the bankruptcy court's determination that Jenkins' debt to Mitelhaus for withholding the Four Commissions and the Flat Fee was excepted from discharge under § 523(a)(4) for larceny. However, we AFFIRM the court's decision that these debts should be excepted from discharge under § 523(a)(6). In the cross-appeal, we AFFIRM the bankruptcy court's decisions that Jenkins' debts for the KS Lawsuit Fees and the Nasr Commissions were not excepted from discharge, and that Jenkins' bad acts should not be imputed to Ramey under § 523(a)(6).

-27-