**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No. AZ-16-1052-BJuL |
| ) | |
| FRANCES DIANE TOTH, ) | Bk. No. 14-18264-DPC |
| ) | |
| Debtor. ) | Adv. No. 15-00105-DPC |
| _____ ) | |
| ) | |
| FRANCES DIANE TOTH, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| TROY SHORT, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Submitted Without Oral Argument
on May 18, 2017

Filed - June 20, 2017

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Daniel P. Collins, Chief Bankruptcy Judge, Presiding

Appearances:   Appellant Frances Diane Toth pro se on brief;
Daniel W. Glasser and David S. Chipman of Chipman
Glasser, LLC on brief for appellee Troy Allan
Short.

Before:   BRAND, JURY and LAFFERTY, Bankruptcy Judges.

---

[1]   This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Chapter 7[2] debtor Frances Diane Toth appeals the bankruptcy court's judgment that a debt owed to Troy Short, which arose from a prepetition state court judgment for various intentional tort claims, was excepted from Debtor's discharge under § 523(a)(6). We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.   Events leading to the Colorado Judgment**

**   1.   Events prior to the parties' April 2011 settlement**

Debtor and Short were a couple from 2008 to 2011 and lived together in Denver, Colorado. During their tumultuous relationship, they were both arrested for domestic abuse and on April 4, 2011, Debtor (and some of her family members, including her adult son and brother) obtained a permanent restraining order against Short. Short was unable to obtain a permanent restraining order against Debtor or her son and brother.

After Debtor and Short parted ways in February 2011, which involved the Denver police needing to supervise the two moving out of the Denver home, each claimed the other had stolen various personal property. This led to four separate actions filed in the Denver Small Claims Court against Short by Debtor, her son Tyler, her brother Robert Lelito and Debtor's former husband. Short alleged counterclaims for over $15,000 in damages and loss of his property, removed the cases to the Denver County Court and caused the four separate lawsuits to be consolidated into one.

On April 11, 2011, after several hours of mediation, the

---

[2]   Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

parties settled their claims and executed a settlement agreement. Thereafter, all of Debtor's and Lelito's small claims actions and Short's counterclaims were dismissed. Short then moved to Buena Vista (Chaffee County), Colorado, a few hours away from Denver.

**2. Events after the parties' April 2011 settlement and the Colorado Judgment**

Shortly after the settlement, Debtor and Lelito filed no less than nine small claims actions against Short in various counties. Debtor alone filed two simultaneous actions in Denver County in early 2012 and then filed a third in Chaffee County. Debtor's two Denver County actions were moved to Chaffee County. Eventually, all three of Debtor's small claims actions were dismissed and re-filed in one civil complaint, discussed below, due to the dollar amount involved.

In June 2013, Debtor, pro se and now living outside of Colorado, filed a civil complaint against Short in Chaffee County (the "Civil Action"), which led to the Colorado Judgment. Debtor alleged claims for fraud, conversion, theft and intentional infliction of emotional distress.

Short alleged counterclaims against Debtor and Lelito in the Civil Action for abuse of process, defamation, interference with prospective business advantage and civil conspiracy. One document attached to Short's counter-complaint is what has been referred to as the Scandalous Letter. The Scandalous Letter was not signed, but Short alleged that Debtor and Lelito had authored it and sent it to those persons closest to Short — his father and step-mother, his employer, and other business and social acquaintances. Short alleged that the Scandalous Letter contained false and defamatory

-3-

statements injurious to his reputation with business and other acquaintances, noting especially the letter's last sentence: "Please note that associating further with this individual you are doing [sic] at the personal risk of you and your families."

In her 40-page response to Short's counterclaims ("Response"), Debtor stated repeatedly that she "look[ed] forward to easily proving" her case at trial and that she was "extremely anxious to get [Short] to trial." Debtor also made disparaging remarks about Short, that his "lies [were] barefaced and well documented," that Short would "continue to physically attack and steal from other victims as he is unstable," that "the only thing that ha[d] kept Short out of jail [was] his daddy," that Short was a "sociopathic liar," and that Short suffered from "mental illness."

By an order dated January 29, 2014, the state court ordered the parties to appear at a pretrial conference on April 10, 2014, at which the court would address all pending motions. The court stated that an "order to appear" was necessary based on Debtor's and Lelito's "prior failure to comply with court orders and the failure to resolve certain matters via telephonic hearings[."]

On April 1, 2014, Debtor sent a letter to the state court requesting that she be contacted by email or phone for purposes of receiving process, because she was out of state for training and would not be receiving mail at her home in California (the "April 1 Letter"). The email address she provided the court was "tsblsht@yahoo.com."

Debtor and Lelito failed to appear in person at the April 10 hearing, but Debtor attempted to appear by telephone. The court

-4-

did not find her reasons for not appearing in person persuasive. The court entered a default judgment against Lelito on April 10 for failing to appear, but granted Debtor a continuance on the condition that by May 15, 2014, she pay Short his attorney's fees and costs incurred for his counsel's April 10 appearance. The court warned that if Debtor failed to pay Short it would enter a default judgment against her with respect to both her affirmative claims and Short's counterclaims against her.

As part of its April 10 order, the state court set a hearing for May 29, 2014, to determine Short's damages as against Lelito, and in the event of Debtor's failure to pay Short's fees and costs, for entry of a final judgment and for determination of Short's damages as against Debtor. Debtor did not pay Short his attorney's fees and costs by May 15, 2014.

On May 28, 2014, Debtor sent a letter to the state court (the "May 28 Letter"), indicating that she would not be attending the default judgment evidentiary hearing set for the next day. Debtor stated that she had spoken to a lawyer about protecting her house in Arizona from any judgment Short may receive. Debtor claimed that the Arizona home was judgment proof and told the court: "Let me be very clear when I tell you, Troy Short will not take one more dime from me. In my lifetime I have had great credit, but I have no qualms about filing bankruptcy against any judgment that is in his favor." In closing, Debtor stated:

> Troy Short will continue making his money doing bit jobs like cleaning up dog poop or mowing lawns as he did when I met him. . . . He is a true piece of s\*\*t and I am scraping him off my shoe. I am throwing my hands in the air, your honor, as I have no other options.

On May 29, 2014, the state court held an evidentiary hearing

-5-

for Short's damages on his counterclaims, given that default judgments had been entered against Lelito and Debtor on April 10 and May 22, respectively. The court heard testimony from Short, Stacy Jordan (Short's fiancee) and Short's expert on economic damages; it also considered written evidence.

That same day, the state court entered what has been referred to as the Colorado Judgment. The relevant factual findings from the Colorado Judgment are as follows:

50. Since [August 2011], however, Toth and Lelito have abused the legal process with the ulterior purpose of harassing and damaging Short.

51. Rather than asserting appropriately alleged claims in one action in an appropriate jurisdiction, Toth and Lelito commenced filing multiple baseless and vexatious small claims lawsuits against Short, one after another, in multiple jurisdictions, with the intent of obtaining as many default judgments as possible and to damage, as much as possible, Short's reputation in his community.

57. Toth and Lelito have filed these multiple small claims actions without any factual or legal basis for doing so and with the sole purpose of harassing Short and damaging his reputation and his ability to earn a living.

63. By way of example only, Toth and Lelito have filed the following small claims actions after February 2, 2011 (not counting their small claims lawsuits in the City and County of Denver that resulted in the April 11, 2011 Settlement):

g. Toth (upon information and belief with the aid of her [sic] Lelito) filed two separate small claims actions at the same time in the City and County of Denver in early 2012. Short was served in Buena Vista with both lawsuits. Short appeared and defended himself and the matters were transferred to Chaffee County in early April 2012. Within two weeks of the transfer, Toth filed yet another small claims action in Chaffee County (Case No. 12C150) with similarly vague allegations. Eventually all three of these actions were dismissed. Toth then filed this present complaint.

-6-

64. The strategy employed by Toth and Lelito to file the multiple claims in multiple jurisdictions enabled them to abuse the service of process procedure to harass Short, smear his name with business contacts and family, and interfere with and damage his relationships.

69. In addition, Toth and Lelito would make phone calls (or would direct others to make phone calls) to Champion Bank (Short's employer) and friends and business associates . . . asserting that Short was being investigated for mortgage fraud or, on other occasions, that Short was being sued multiple times for fraud or some other improper or illegal conduct.

70. In addition, Toth and Lelito on multiple occasions, sent letters and emails to Short's family, business associates, and friends, containing defamatory information with the intent to interfere with and damage Short's reputation and business.

The state court determined that all elements for Short's four counterclaims had been satisfied and awarded him damages of $181,488.00 for lost income and attorney's fees against Lelito and Debtor, jointly and severally (based on civil conspiracy), and damages of $2,589.30 against Debtor only for Short's attorney's fees and costs incurred on April 10, 2014, and post-judgment interest. No party appealed the Colorado Judgment.

Short domesticated the Colorado Judgment in Arizona and filed a judgment lien against Debtor's Arizona home. A sheriff's sale of the Arizona home was set for January 9, 2015.

**B.    Postpetition events**

Debtor, with the assistance of attorney Dana Stoker, filed a chapter 7 bankruptcy case in Arizona on December 15, 2014.[3]

---

[3] Several events occurred in the main case, which Debtor attempts to challenge on appeal but are not properly before this Panel. Essentially, all issues Debtor raises in her brief — the ineffective assistance of counsel and Stoker's alleged abandonment

(continued...)

-7-

### 1.   Short's adversary proceeding

Short sought to except the Colorado Judgment from discharge under § 523(a)(6).  Short alleged that the entry of the Colorado Judgment on his four counterclaims, which were all intentional torts, required a finding by the state court that Debtor acted to intentionally or deliberately cause him injury.  Short alleged that by engaging in the conduct Debtor did after the April 2011 settlement, which resulted in the Colorado Judgment, she willfully and maliciously injured him.

In her answer (filed by adversary counsel Michael Reddig), Debtor asserted that Short's § 523(a)(6) claim failed because the Colorado state court did not make any finding of "maliciousness" or make any findings with respect to Debtor's subjective state of mind to establish the required "willful" element.

---

[3](...continued)
of her in the main case, the alleged improper notice of and sale of her Arizona home, the bankruptcy court's ruling as to Debtor's bad faith attempt to convert her case to chapter 13, and the bankruptcy court's alleged bias and violation of Debtor's due process and/or constitutional rights in connection with those matters — were the subject of an earlier appeal of the bankruptcy court's orders denying Debtor's motion to convert her case to chapter 13 and denying the chapter 7 trustee's compromise motion to sell the Arizona home with Short. See AZ-15-1425.  Those issues were fully addressed by a Panel in a Memorandum issued on October 13, 2016, which affirmed the bankruptcy court.  Therefore, we will not address these issues a second time.

We also do not address Debtor's arguments challenging the merits of the Colorado Judgment.  As a federal court, we are not permitted to review final determinations of state court decisions. See Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923); D.C. Dist. Ct. App. v. Feldman, 460 U.S. 462 (1983); Worldwide Church of God v. McNair, 805 F. 2d 888, 890 (9th Cir. 1986).  Furthermore, the parties agreed at trial that they were bound by the state court's determinations made in the Colorado Judgment.

-8-

### a. Short's motion for summary judgment

Short later moved for summary judgment on his § 523(a)(6) claim on the basis of issue preclusion. After a hearing, the bankruptcy court denied Short's motion, ordering that a trial be held on Debtor's subjective intent. The parties and the court agreed that the findings in the Colorado Judgment were binding and could not be relitigated in the adversary proceeding.

### b. Trial on Short's dischargeability complaint

The bankruptcy court held a one-day trial to determine whether Debtor subjectively intended to injure Short. Reddig represented Debtor. Witnesses included Short, Debtor, Tyler, Bruce Hogy (Short's former friend), Jeffrey Mahler (a long-time friend of Debtor) and Jordan.

Short testified that he first learned of the Scandalous Letter's existence when a customer called him to discuss it and the attached restraining order. Short then learned that many other of his customers and friends also received the Scandalous Letter and attached restraining order. Short testified that he believed Debtor authored the unsigned Scandalous Letter because it was very similar to other documents she had filed in court with respect to the restraining order and she would have been the only one who knew the identities of Short's personal contacts. Debtor repeatedly denied authoring the Scandalous Letter or ever seeing it.

Debtor was also questioned about the April 1 Letter and the May 28 Letter she sent to the state court in connection with the Civil Action. Debtor testified that the email address she created for purposes of receiving process and provided to the state court

in her April 1 Letter — tsblsht@yahoo.com — stood for "Troy Short b**ls**t at Yahoo dot com."

Debtor testified that she believed her legal actions filed against Short after the April 2011 settlement were not barred by the parties' agreement. She further testified that it was not her subjective intent to punish Short; she only wanted to get back the furniture and money Short took from her.

The bankruptcy court took the matter under advisement.

### c. The bankruptcy court's ruling

On February 4, 2016, the bankruptcy court entered its Under Advisement Order, finding in favor of Short on his § 523(a)(6) claim. On February 18, 2016, the bankruptcy court entered a judgment for Short, ruling that the Colorado Judgment in the amount of $184,077.30 (plus accrued interest) was nondischargable under § 523(a)(6). Debtor timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err in determining that Debtor subjectively intended to injure Short and therefore the Colorado Judgment was nondischargable under § 523(a)(6)?

## IV. STANDARDS OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002). A finding of fact is clearly erroneous if it is illogical, implausible or without support in the record. Retz v. Samson (In re Retz),

-10-

606 F.3d 1189, 1196 (9th Cir. 2010). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985). When factual findings are based on credibility determinations, we must give even greater deference to the bankruptcy court's findings. Id. at 575.

## V. DISCUSSION

**A.    Section 523(a)(6)**

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." Both willfulness and maliciousness must be proven in order to apply § 523(a)(6). Ormsby v. First Am. Title Co. of Nevada (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010). "A 'willful' injury is a 'deliberate or intentional **injury**, not merely a deliberate or intentional **act** that leads to injury.'" Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008) (quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) (emphasis in original)). The willful injury requirement under § 523(a)6) "is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." In re Ormsby, 591 F.3d at 1206.

"A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. Malice may be inferred based on the nature of the wrongful act." Id. at 1207. The willful injury must be established, however, before malice may be inferred. See id. (citing Thiara v. Spycher Bros. (In re Thiara),

-11-

285 B.R. 420, 434 (9th Cir. BAP 2002) (the "done intentionally" element of a malicious injury brings into play the same subjective standard of intent which focuses on knowledge of harm to the creditor).

Although Debtor does not challenge the legal standard applied by the bankruptcy court, we conclude that it applied the proper standard for a willful and malicious injury under § 523(a)(6).

**B.     The bankruptcy court did not err in determining that Debtor subjectively intended to injure Short.**

As noted above, Debtor attempts to raise a variety of issues that are either not relevant to this appeal or were already addressed by a prior Panel in Case No. AZ-15-1425.  Her brief essentially fails to address the issue before us, which is whether the bankruptcy court correctly determined that the Colorado Judgment was excepted from Debtor's discharge under § 523(a)(6) and, more precisely, whether the evidence established that she had the subjective intent to injure Short.  However, because Debtor is proceeding pro se in this appeal, we will construe her arguments liberally.  See Kashani v. Fulton (In re Kashani), 190 B.R. 875, 883 (9th Cir. BAP 1995).

While Debtor raises approximately eighteen issues on appeal, we decipher only two that have any relevance.  First, Debtor faults the bankruptcy court for not applying the doctrine of unclean hands, going so far as to say that the court "abetted" Short's wrongdoing.  The unclean hands doctrine provides that a plaintiff in equity must "have acted fairly and without fraud or deceit as to the controversy in issue." Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1097 (9th Cir. 1985).  This equitable

doctrine has been held applicable in dischargeability proceedings. See, e.g., Northbay Wellness Grp., Inc. v. Beyries (In re Beyries), 789 F.3d 956, 959-60 (9th Cir. 2015).

Leaving aside Debtor's attack on the bankruptcy court's integrity, a position not well received by this Panel, she neither pleaded unclean hands as an affirmative defense in her answer to the dischargeability complaint nor did she ever raise it at any point during the proceeding below. Accordingly, we consider this argument waived. Hillis v. Heineman, 626 F.3d 1014, 1019 (9th Cir. 2010) (argument raised for first time on appeal and never argued before the trial court is deemed waived). In any event, it appears that the bankruptcy court did take into account Short's prior conduct against Debtor but determined that his bad acts did not justify or outweigh Debtor's wrongful conduct:

> While the Court finds for Plaintiff in this Adversary Proceeding, the parties should not take this as an exoneration of Short's behavior. It is clear to the Court that Short has behaved badly towards Toth since their 2011 breakup. He has intimidated her and caused her to be rightfully concerned for her safety. Nevertheless, Short's bad acts do not justify Toth's wrongful conduct noted in this Order.

Order (Feb. 4, 2016) 13:1-5.

Debtor also challenges the bankruptcy court's finding that she authored the Scandalous Letter, arguing that Short possibly fabricated it. We review this and the bankruptcy court's other findings of fact for clear error. In re Su, 290 F.3d at 1142.

In addition to the findings made by the state court in the Colorado Judgment, the bankruptcy court made its own findings to determine that Debtor had acted with the subjective intent to injure Short. The evidence of most importance was Debtor's

-13-

multiple, baseless lawsuits filed against Short after the April 2011 settlement, the May 28 Letter, the Scandalous Letter and Debtor's behavior on the witness stand.

After reviewing the parties' April 2011 settlement agreement, the bankruptcy court agreed that Debtor had the legal right to bring those claims that were unsettled against Short. However, having the legal right to bring unsettled claims was quite different than "' . . . filing multiple baseless and vexatious small claims lawsuits against Short one after another, in multiple jurisdictions, with the intent of obtaining as many default judgments as possible and to damage, as much as possible, Short's reputation in his community.'" Order (Feb. 4, 2016) 10:12-15 (quoting ¶ 51 of the Colorado Judgment). The bankruptcy court found that Debtor had pursued her many lawsuits against Short with the actual intent of harming him.

Debtor's statements in the May 28 Letter, about filing for bankruptcy should Short be awarded any judgment in his favor, also made it clear to the bankruptcy court that Debtor "pursued her claims against Short in Chaffee County Court for over three years with no intention of ever being held accountable for her actions, under the mistaken belief that she could simply file bankruptcy and fully discharge any judgment awarded in favor of Short." Id. at 8:7-10. The bankruptcy court found that Debtor's actions in this regard were intended to, and actually did, harm Short.

A critical piece of evidence was the unsigned Scandalous Letter (and attached copy of Debtor's restraining order against Short) sent to Short's family members and various business and social acquaintances. Short testified that he believed Debtor

-14-

authored the Scandalous Letter based on its similarity to Debtor's court filings and that she alone would know the recipients of it as people being close to Short. The bankruptcy court found Short's testimony credible.

Debtor testified that she did not author the Scandalous Letter and had never seen it. The bankruptcy court did not find Debtor's testimony credible. The court noted that, when Debtor was questioned about the Scandalous Letter, she was "twisting in the witness chair, continually clearing her throat, shifting her eyes around the courtroom and grimacing and scowling while on the witness stand[."] Id. at 10:2-4. The court further observed that the Scandalous Letter was very similar in "nature, tone and verbiage" to Debtor's 40-page Response filed in the Civil Action. Id. at 9:24. Based on this evidence, the court concluded that Debtor had authored the Scandalous Letter and caused it and the restraining order against Short to be sent to the people identified by Short. In addition, the court found that Debtor had drafted and sent the Scandalous Letter to the very people who she knew Short would most likely not want to receive it and that she did this to humiliate, embarrass and damage Short in his personal and business relationships.

Contrary to Debtor's argument, we are unable to conclude the bankruptcy court clearly erred in finding that she authored and sent the Scandalous Letter.

Based on the evidence, the bankruptcy court ultimately found that Debtor's actions after the April 2011 settlement which led to the Colorado Judgment were willful, in that they were both deliberate and intentional; Debtor's actions were also malicious,

-15-

in that they were wrongful, done intentionally, caused Short injury, and were done without just cause or excuse. Accordingly, the court determined that the Colorado Judgment, in its entirety, was excepted from Debtor's discharge under § 523(a)(6).

Given the record, we cannot say that the bankruptcy court's findings as to Debtor's subjective intent to injure Short were clearly erroneous. They are not illogical or implausible and are fully supported by the record.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.